**LEKSI, INC., Plaintiff,**

v.

**FEDERAL INSURANCE CO., St. Paul Fire and Marine Insurance Company, the Atlantic Mutual Insurance Company, and Hartford Accident & Indemnity Co., Defendants.**

Civ. No. 88–4123.

United States District Court,
D. New Jersey,
Camden Vicinage.

Dec. 1, 1989.

As Amended Dec. 8, 1989.

See also, D.C., 736 F.Supp. 1331.

Louis A. Petroni, Montgomery, McCracken, Walker & Rhoads, Haddonfield, N.J., for plaintiff.

Bruce E. Barrett, Slimm, Dash & Goldberg, Westmont, N.J., for defendant, Hartford Ins. Co.

James B. Burns, Clark, Ladner, Fortenbaugh & Young, Haddonfield, N.J., for defendant, Federal Ins. Co.

Richard T. Barth, Gallagher, Wheeler, Reilly & Lachat, Woodbury, N.J., Mitchell Lathrop, and Kathleen Kenny, Adams, Duque & Hazelton, New York City, for defendant, St. Paul Fire & Marine.

Kevin E. Wolff, Morgan, Melhuish, Monaghan, Arvson, Abrutyn & Lisowski, Livingston, N.J., for defendant, Atlantic Mut. Ins. Co.

**JOEL B. ROSEN,** United States Magistrate:

Before the court on reserve decision is a motion by the plaintiff, Leksi, Inc. ("Leksi"), to compel the defendants to answer interrogatories, to produce documents, and to reimburse the plaintiff for expenses incurred in connection with this motion. The issues have been extensively briefed by counsel who have also presented informative oral argument. Having reviewed all the papers submitted and having considered the oral presentations, and for the reasons discussed below, plaintiff's motion to compel the defendants to answer the first set of interrogatories and requests for production of documents will be <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>. Leksi's motion to compel the defendants to answer the contention interrogatories is <u>DENIED WITHOUT PREJUDICE</u>. This opinion summarizes my findings and rulings and resolves all aspects of plaintiff's motion. An Order will accompany this opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is a declaratory judgment action filed pursuant to 28 U.S.C. § 2201(a) wherein Leksi seeks relief in the nature of a declaration of coverage under various insurance policies issued to Leksi by the defendants. Under the terms of these contracts, Leksi has demanded that the defendants defend and indemnify Leksi in certain lawsuits and proceedings that have been brought against it in both federal and state courts.[1] The defendants have either declined to defend and/or indemnify Leksi, or have agreed to defend Leksi subject to purported reservations of rights.

---

1. Leksi is a party in several actions filed in the United States District Court for the District of New Jersey: *State of New Jersey, Department of Environmental Protection v. Gloucester Environmental Management Services, Inc., et al.,* Civil No. 84–0152 (D.N.J.) ("GEMS Action"); *United States of America v. Rohm and Haas Company, Inc. et al.,* Civil No. 85–4386 (D.N.J.) ("LIPARI Action"); *AT & T Technologies, Inc., et al. v. Transtech Industries, Inc., Scientific Chemical Treatment Company, Inc. and Scientific, Inc.,* Civ. No. 88–4267 (D.N.J.) ("CARLSTADT Action"). Leksi is also the recipient of a NJDEP Directive in the Matter of the Bridgeport Rental and Oil Services Waste Disposal Site ("BRIDGEPORT Directive"). Although Leksi's declaratory judgment complaint originally incorporated only the GEMS and LIPARI actions, Leksi filed a motion to amend its complaint to include the CARLSTADT and BRIDGEPORT matters which was GRANTED by Order issued November 20, 1989. In addition, the submissions of counsel indicate that Leksi is involved in some 13 actions which were brought by private parties in the Superior Court of New Jersey.

Leksi, formerly known as Sartomer Resins, Inc. and as Sartomer Industries, Inc., is a Pennsylvania corporation located in Essington, Pennsylvania. The underlying actions allege that Leksi generated and caused to be transported one or more hazardous substances to the sites which are the subjects of the aforementioned lawsuits and proceedings. The defendants are four insurance companies who provided policies to Leksi during the periods in which they are alleged to have generated the hazardous substances and caused them to be transported.

Defendant, Federal Insurance Company ("Federal"), a New Jersey corporation, issued comprehensive general liability ("CGL") insurance policies and excess umbrella liability insurance policies to Leksi which generally span the period from September 30, 1966 through September 30, 1978. Defendant, St. Paul Fire and Marine Insurance Company ("St. Paul"), a Minnesota corporation, issued a CGL and an umbrella policy to Leksi covering the period from September 30, 1978 through September 30, 1979. Defendant, Hartford Accident & Indemnity Company ("Hartford"), a Connecticut corporation, issued two CGL policies to Leksi covering the periods from September 30, 1979 through September 30, 1981. Defendant, The Atlantic Mutual Insurance Company ("Atlantic"), a New York Corporation, issued liability/commercial umbrella policies insuring Leksi essentially from September 30, 1981 through March 2, 1985.

Presently before the court is Leksi's motion to compel the defendants to answer interrogatories and produce documents. On January 13, 1989, pursuant to Discovery Order No. 1 filed on January 4, 1989, Leksi served the four insurer defendants with three forms of written discovery: a first set of interrogatories, contention interrogatories, and a request for production of documents. Under the Discovery Order, defendants were to serve their responses to all discovery requests before January 31, 1989. Leksi contends that the defendants have refused to provide information requested in the first set of interrogatories regarding the insurers'

interpretation of policy language (Section B–4, Section E), the insurers' participation in insurance organizations (Section C), the insurers' adoption of standard form policy language promulgated by the organizations (Section H), the manner in which the insurers applied policy language to claims similar to Leksi's underlying actions (Section D, A–6, A–8), the insurers' reinsurance of the risk covered by Leksi policies (Section B–9) and their reserves for claims asserted against Leksi (Section D–4). In addition, the defendants have failed to provide information regarding communications among the parties in connection with Leksi's various notices of claim (Section G–4). Leksi moves this court to compel the defendants to answer the interrogatories and to produce the documents associated with these discovery requests and award Leksi expenses in connection with this motion.

Leksi argues, in support of its motion, that the information requested is within the scope of discovery under Fed.R.Civ.P. 26(b) since it is directly relevant to the issues in the declaratory judgment action. Leksi asks this court to apply New Jersey law to this matter. It argues that New Jersey case law supports the admission of extrinsic evidence in cases involving contractual interpretation and, therefore, the information which they seek to discover is reasonably calculated to lead to the discovery of admissible evidence.

Defendants disagree and argue that such information is irrelevant to the underlying issues. Defendants either take the view that Pennsylvania law applies to this matter and that under Pennsylvania case law, extrinsic evidence is not admissible in order to facilitate contract interpretation and, therefore, the information sought is not discoverable; or their position is that no choice of law decision is required at this time but the information is simply not discoverable because it is irrelevant, privileged and its production would be unduly burdensome and oppressive.

Regarding the contention interrogatories, Leksi maintains that these are focused on the denials and defenses asserted by the defendants and, therefore, should be an-

swered in order to narrow the issues involved in this case. Defendants, however, claim that it is too difficult to answer the contention interrogatories because insufficient discovery has been conducted thus far.

## DISCUSSION OF LAW

■ The scope of discovery under the federal rules is very broad. Under Fed.R. Civ.P. 26, "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." However, the discovery rules embody competing concerns. An effort to determine a discovery dispute must contain an assessment of the potential for developing relevant evidence in addition to an analysis of the relative burdens the discovery may entail.

In contemplation of this discovery motion, Leksi argues that it is necessary for this court to rule on a choice of law issue. Leksi seeks to have New Jersey law applied to this case due to the strong emphasis in New Jersey insurance cases on ascertaining the intent of the parties, while the insurers request a determination under Pennsylvania law which they contend forces the opposite result. However, I can see no reason to decide such an issue at this time. The choice of law issue only becomes critical upon the need to determine the admissibility of evidence at trial. For purposes of deciding the discovery issues before this court, no choice of law determination is necessary.

■ In addition, the choice of law issue is extremely premature in light of the fact that so little discovery has been conducted to date. It would be difficult to determine whether the locus of contracting in connection with the insurance policies was Pennsylvania or another state based only upon the information gathered to date. Nor is the locus of contracting necessarily the governing factor in determining which state's law to apply. In diversity cases, any conflict of laws must be resolved by the substantive law of the state in which the Federal Court sits. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The New Jersey choice of law rules will apply in this matter since it was brought pursuant to 28 U.S.C. § 1332.

New Jersey applies the law of the place of contracting unless "the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield." *Witco Corp. v. Travelers Indemnity Co.,* No. 86-2997(JWB), slip op. at 5 (D.N.J. May 1, 1987) (quoting *State Farm Mutual Auto Insurance Co. v. Estate of Simmons,* 84 N.J. 28, 37, 417 A.2d 488 (1980)). In *Witco,* Judge Bissell held that New Jersey law applied to the interpretation of CGL policies in a declaratory judgment action seeking coverage for claims filed under the New Jersey Solid Waste Management Act and the Spill Compensation and Control Act.[2] Since New Jersey was the site of the pollution, it had a significant interest in the underlying issue of whether coverage is available in order to remedy the damage. As in *Witco,* there is a substantial issue of New Jersey public policy in this case, since the genesis of the suit involves impacts upon the New Jersey environment. *Id.* at 7. *See also Sharon Steel Corporation v. Aetna Casualty & Surety Co., et al.,* Nos. C-87-2306 and C-87-2311 (Utah 3rd Jud. Dist. July 22, 1988) (court applied the law of the state in which the pollution occurred where plaintiff sought insurance coverage under CGL policies).

■ It may well be, therefore, that New Jersey law will apply to the issues that arise at trial regarding the admissibility of extrinsic evidence in the interpretation of the insurance policies. Under New Jersey case law, extrinsic evidence might be admitted to interpret pollution exclusion

---

**2.** I am aware that the facts of *Witco* are arguably distinguishable since, in that case, a portion of the insured's place of business was located in New Jersey. However, I read Judge Bissell's opinion to apply the policy concerns of this state to the location of the pollution which happened to be the insured's plant in New Jersey. The insurance policies in *Witco* covered the company's operations and the pollution was considered part of the operations. In addition, the insurance companies were licensed and authorized to transact business in New Jersey.

clauses such as the ones in question in this case. *See, e.g., Broadwell Realty Services, Inc. v. Fidelity and Casualty Co.,* 218 N.J.Super. 516, 528 A.2d 76 (App.Div.1987). The implication, therefore, is that such extrinsic evidence is discoverable since it may lead to admissible evidence at trial.

Furthermore, even if Pennsylvania law were chosen to apply, an analysis thereunder is not as clear cut as the defendants would have this court believe. Although there is case law to indicate that the admission of extrinsic evidence in some cases of insurance policy interpretation is not favored in Pennsylvania, such evidence may be held admissible in some instances. *McNeilab v. North River Insurance Co.,* 645 F.Supp. 525, 546 (D.N.J.1986), *aff'd,* 831 F.2d 287 (1987). *See also Compagnie des Bauxites de Guinea v. Insurance Company of North America,* 794 F.2d 871, 875 (3d Cir.1986); *Standard Venetian Blind Company v. American Empire Insurance,* 503 Pa. 300, 469 A.2d 563 (1983); *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193 (1977) (quoting *Cooper v. Government Employees Insurance Co.,* 51 N.J. 86, 237 A.2d 870 (1968)).

It is possible that New Jersey law will apply to the issues in this case. I decline to so hold at this juncture. I also decline to rule whether the policies in question are or are not ambiguous and, respectively, whether extrinsic evidence may or may not be admitted to aid in their interpretation. However, it is certainly possible that at least some of the information which Leksi seeks may be deemed admissible at trial. Although this is not determinative of whether or not such information is discoverable, it is noteworthy in an analysis of the potential for developing relevant evidence.

■ I find that the information which Leksi seeks concerning the drafting history of the insurance policies, the insurer's participation in insurance organizations, and the insurer's adoption of standard form policy language promulgated by the organizations is relevant and discoverable. It is recognized that the question of relevancy is to be more loosely construed at the dis-

covery stage than at the trial. 8 Wright & Miller, *Federal Practice and Procedure* § 2008. A clear distinction must be made between the right to obtain information by discovery and the right to use it at trial. *Id.* § 2007.

Relevant matter encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The defendants vigorously contend that the information sought by Leksi is irrelevant since it involves extrinsic evidence. They have cited many cases from various jurisdictions in which extrinsic evidence was considered inadmissible at trial. It is my opinion that such cases, while informative, are not determinative of the issue of whether the information in question could lead to other matter that may bear on the underlying declaratory judgment action. In other words, the fact that such information may not be admissible at trial is not dispositive of whether it is discoverable at this juncture. In addition, I do not find the New Jersey case law cited by the defendants to be persuasive. Although lower New Jersey courts have disallowed discovery of some of the materials requested by Leksi, the transcripts and opinions in those cases do not provide a clear explanation of the facts of the cases or the basis for the courts' findings. *See, e.g., Schering Corporation v. Evanston Insurance Company,* No. L–97311–88 (N.J.Super.Ct.Law Div. August 8, 1989).

■ The central issue in this case concerns the interpretation of the language of the insurance policies provided to Leksi by the defendants. This Circuit has held that the meaning of a contract may be derived from the parties' intent. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001 (3d Cir.1980). The drafting history of the policies, the insurer's participation in organizations involved in the drafting and their adoption of standard form language promulgated by these organizations is relevant to the insurers' intent concerning the policies in question. Furthermore, in this Circuit, a contract may be

considered ambiguous if it is capable of being understood in more senses than one. It must be concluded that the language is capable of only one interpretation before it can be said no ambiguity exists. *Landtect Corporation v. State Mutual Life Assurance Co., Etc.*, 605 F.2d 75, 79–80 (3d Cir. 1979) (Judge Hunter) (quoting *Gerhart v. Henry Disston & Sons*, 290 F.2d 778, 784 (3d Cir.1961)). The issue of the ambiguity of the policies is for the trial court to decide. Since that issue is not before this court, I find that the information sought by Leksi concerning the drafting history of the policy language, the insurers participation in insurance organizations and their adoption of particular policy language is relevant as it may lead to admissible evidence concerning the insurers' intent and their interpretation of the policies.

The relevancy of this information must be balanced against the burdensomeness of its production. I do not find that such production would be unmanageable or oppressive. Furthermore, the defendants, while they make generic objections with respect to privilege and work product, do not refer to specific documents which they feel are privileged. Nor do their privilege objections comply with the specificity requirements of General Rule 16C of the United States District Court of New Jersey or the Federal Rules of Civil Procedure.

■ Fed.R.Civ.P. 33(a) requires that the objecting party state his reason for the objection. It is the obligation of the objecting party to justify his objections. Rule 33(a) advisory committee notes. Therefore, while the defendants will be directed to answer interrogatories and produce documents, if they assert that a particular document is protected by a particular privilege then they must object with particularity. Since I find that the drafting history, insurance organization participation and policy interpretation information are relevant areas of inquiry, that defendants have failed to demonstrate that they constitute privileged material, and that the production of such information would not be unduly burdensome, this information is discover-

able and defendants will be ordered to comply with Leksi's requests accordingly.

■ Leksi also seeks information regarding the manner in which the insurer's have applied the policy language to claims similar to Leksi's made by other insureds. It argues that such information is relevant to the insurers' intent and interpretation of the policies. *Carey–Canada, Inc. v. California Union Insurance Co.*, 118 F.R.D. 242 (D.D.C.1986). Defendants argue that such information is irrelevant. *See Morton Thiokol v. General Accident Ins. Co.* No. C–3959–85, (N.J.Super.Ct.Ch.Div. July 25, 1986); *See also Transport Indemnity Insurance Co., Inc. v. Argonaut Ins. Co.*, (Calif.Super.Ct. Feb. 1, 1988). I disagree with the defendants. Such information would be relevant to the insurers' interpretation of the language of an identical policy in an identical situation. *Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.*, 117 F.R.D. 283 (D.D.C.1986), aff'd 27 E.R.C. 1769, 1987 WL 8512 (D.D.C. 1987). In *Independent*, Magistrate Burnett permitted plaintiff's limited discovery of their insurer's treatment of identical claims by other policy holders. Magistrate Burnett limited the time frame of the inquiry and required the plaintiff to acquire releases from the other insureds. *See also National Union Fire Ins. Co. v. Stauffer Chemical Co.*, 558 A.2d 1091, 1094–95 (Del. Super.Ct.1989). Clearly, the relevance of information regarding other insureds may be established, however, in my view, it is remote.

While relevancy is crucial to a determination of discoverability, I cannot be guided by this factor alone. The 1983 amendment to Rule 26(b)(1) of the Federal Rules emphasized that discovery must be proportional, as well as relevant, to the lawsuit and must be tailored to the case at hand. The rule of proportionality is intended to "guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." Fed.R.Civ.P. 26 advisory committee note.

The information which Leksi seeks concerning the files of other insureds is disproportionate to the declaratory judgment action it has filed. To compel the production of the files of other insureds not only involves enormous inconvenience and management difficulties, but also entails a frightening potential for spawning unbearable side litigation which, in my view, defeats the purpose and spirit of the discovery rules themselves.[3] In this district, the court may restrict discovery as long as the restriction does not foreclose "discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." *See, e.g., Robbins v. Camden Board of Education,* 105 F.R.D. 49, 61–63 (D.N.J.1985). Leksi does not need to discover the information contained in the files of other insureds in order to develop and prepare its case. I hold, therefore, that the information sought by Leksi regarding the files of other insureds is not discoverable because although it may be considered remotely relevant, its production would be unduly burdensome and disproportionate to this litigation.

Leksi also argues that information regarding reinsurance and reserves is necessary in order that it may gain insight into the insurers' interpretation of the scope of coverage provided by CGL policies as well as their understanding and assessment of the risk involved in issuing policies to Leksi. Defendants' objections to producing such information are grounded in relevance.

Reinsurance involves a company's attempt to spread the burden of indemnification. *Excess & Casualty Reinsurance Association v. Insurance Commissioner of the State of California,* 656 F.2d 491, 492 (9th Cir.1981). It is a decision based on business considerations and not questions of policy interpretation. I conclude, therefore, that its relevance is very tenuous and its production is not compelled at this juncture except insofar as an insurer has "lost" Leksi's policy. In that case, information concerning reinsurance should be discoverable in order to attempt to reassemble the terms of the original contract which is now unavailable. If the unavailable policy has been the subject of a facultative reinsurance certificate in the past, then it is not overly burdensome for the defendant insurer to provide Leksi with information.[4]

"A reserve essentially reflects an assessment of the value of a claim taking into consideration the likelihood of an adverse judgment and such estimates of potential liability do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as a claim analysis." *Independent Petrochemical,* 117 F.R.D. at 288. The purpose of discovery—expedition of the litigation by narrowing the area of controversy or by avoiding unnecessary testimony or by providing a lead to evidence—will not be served by allowing discovery of reserves. *Union Carbide Corp. v. Traveler's Indemnity Co.,* 61 F.R.D. 411, 413 (W.D.Pa.1973). In addition, as the insurers point out, the setting of reserves is performed by claims personnel who know little about Leksi's policies. I find that the reserve information is only tenuously relevant to whether insurance coverage exists in this matter and this information is not discoverable at this time.

The last group of interrogatories contained in Leksi's first set which is subject to controversy concerns coverage decisions

---

3. Leksi has recently suggested a "sampling" procedure for obtaining the information it seeks from the files of other insureds. Defendants have not accepted Leksi's proposition and neither do I. The "sampling" technique, although arguably more manageable, does not solve the problems inherent in the involuntary production of documents in which non-parties may hold valid privileges.

4. Facultative reinsurance is where the initial insurer seeks to place reinsurance in order to spread the risk involved with large policy exposures. As pointed out by counsel, it is simpler to trace a particular policy in a facultative reinsurance contract than through treaty reinsurance. Treaty reinsurance is where the reinsurer and the reinsured enter into a contract whereby the reinsurer provides reinsurance on all policies underwritten by the reinsured in a specified percentage either on all or specified classes of the reinsured's business. 19 *Couch On Insurance 2d* § 80:3 (1983).

made by the insurers in connection with Leksi's claims. Clearly, this information is relevant to the declaratory judgment action. Defendants have argued generally that communications regarding Leksi's claims are protected from discovery but they have failed to do so with particularity.

Leksi also seeks to compel the defendants to answer contention interrogatories. These interrogatories essentially ask the defendants to provide the basis for the allegations made in their Answers to Leksi's Complaint. Unlike plaintiff's first set of interrogatories, these were more closely tailored to each individual insurer.

In response to these interrogatories, the defendants state that, pursuant to Rule 33(b), the information requested will be more fully developed after discovery proceeds in this litigation. The Advisory Committee Note to Rule 33(b) states in part that "since interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed, the court is expressly authorized to defer an answer."

■ Defendants also object to the contention interrogatories as improper and seeking legal conclusions. Interrogatories seeking to elicit what a party's contentions will be at the time of trial are not objectionable, as responses to these questions will help narrow the issues to be tried. *See Anderson v. United Air Lines, Inc.*, 49 F.R.D. 144, 148 (S.D.N.Y.1969). Consequently, the issue to be resolved is whether defendants' answers to the contention interrogatories would be best delayed until discovery proceeds in this case.

■ Since the parties to this action are just, at this time, overcoming major discovery obstacles, Leksi's motion to compel answers to the contention interrogatories is premature. These answers may be more fully set forth by the defendants after discovery has proceeded in this matter. Ac-

cordingly, Leksi's motion with respect to the contention interrogatories is DENIED WITHOUT PREJUDICE in order to permit Leksi to refile its motion if, after further discovery is conducted, the defendants fail to respond to Leksi's satisfaction.

Leksi also seeks reimbursement for expenses incurred in connection with its motion. Since much of defendants' opposition to Leksi's motion was substantially justified, an award of expenses would be unjust. Fed.R.Civ.P. 37(a)(4). Accordingly, that portion of Leksi's motion is DENIED.

Pursuant to the outline I have delineated above, I shall now review Leksi's first set of interrogatories and requests for production of documents and rule on each problem.[5] As a preface, it must be noted that Leksi's interrogatories refer to the GEMS, LIPARI and state actions only. See, Plaintiff's Interrogatories, Definition 3. Since the CARLSTADT and BRIDGEPORT matters have just recently become part of the complaint; the interrogatories in question do not concern those proceedings.

I. Insurers' Interpretation of Policy Language:

Interrogatory No. B–4:

■ This requests the identity and responsibilities of the defendants' employees who were responsible for the drafting of Leksi's insurance policies from January 1, 1957 to the present in addition to an identification of all documents in connection with the drafting of those policies. Defendants object to this interrogatory as overbroad, over-extensive, irrelevant and immaterial, vague and ambiguous, not reasonably designated, and unduly burdensome. In addition, Federal objects to the term "drafting" which it contends is susceptible to numerous interpretations.

This interrogatory is not overbroad because it is limited in time and subject matter. It is not over-extensive, irrelevant or

---

**5.** I have discussed the interrogatories in groups which follow the general outlines of the briefs submitted by counsel. I have not specifically addressed interrogatories which were not included in the groupings as set forth in the briefs. I would hope that counsel will utilize this opinion as a guide to determine the appropriate procedure to follow with respect to those interrogatories.

immaterial since it specifically concerns the drafting history of the insurance policies issued to Leksi by the insurers. I have found that such drafting history constitutes relevant information which may lead to admissible evidence at trial. It is not vague or ambiguous since it is clear, intelligible and does not call for speculation. The interrogatory clearly describes and designates the items it seeks to have the insurers produce. I also reject Federal's contention that the term "drafting" is too vague. Drafting is the tentative, preparatory writing out of a document for purposes of discussion and correction. *Black's Law Dictionary* 582 (Fourth Edition 1968). Plaintiff's motion with respect to this interrogatory is <u>GRANTED</u>.

Interrogatory No. E-1:

 This requests the identity of all documents referring to or evidencing the insurers' interpretation of specific language contained in liability policies issued by defendants. The defendants object on the basis that this information is in the possession of the policyholder. They claim that the question seeks legal conclusions, that it's oppressive, over-extensive, not reasonably designated, unduly burdensome, overbroad, vague and ambiguous, and unreasonably cumulative.

This information is not in the possession of Leksi since the interrogatory does not ask what the policy's language states but rather what it means to the insurers. Nor does this question seek legal conclusions. It simply inquires as to the intent of the insurers regarding the language of the policies. Nor is the question oppressive, burdensome or vague because it is limited to particular language contained in the liability policies. In conformity with my findings, however, I will disallow any inquiry into the files of other insureds since I have found that material to be disproportionate to the issues in Leksi's declaratory judgment action. Plaintiff's motion with respect to this interrogatory, as amended, is <u>GRANTED</u>.

Interrogatory No. E-2:

This expands on Interrogatory No. E-1 by requesting the identity of all persons who participated in any decision regarding the interpretation of specific language contained in the liability policies. The laundry list which comprises the defendants objections includes: privileged, confidential information, private information, irrelevant and immaterial, unrelated matters, vague and ambiguous, oppressive, over-extensive, not reasonably designated, unduly burdensome, unreasonably cumulative, overbroad and seeking legal conclusions.

If the defendants feel that particular documents or communications are protected by specific privileges or work product claims, then they must object with particularity according to the Local Rules and the Federal Rules of Civil Procedure. Defendants' objections pertaining to materiality and relevance fail, except insofar as information contained in the files of other insureds is requested. Inquiry into the insurers' interpretation of the language specified is relevant to Leksi's action. The other objections fail for the reasons mentioned in reference to Interrogatory number E-1. Except insofar as it pertains to the files of other insureds, plaintiff's motion with respect to this interrogatory is <u>GRANTED</u>.

Interrogatories No. E-3 and E-4:

These request the insurers' determinations of any inconsistencies in their interpretations of specific language contained in the liability policies. Defendants object to these interrogatories as vague and ambiguous, irrelevant and immaterial, pertaining to unrelated matters, over-extensive, not reasonably designated, seeking legal conclusions and simply incomprehensible and improper.

Again, the relevancy of this inquiry has been established. The questions are not vague, ambiguous, over-extensive or unreasonably designated since they refer to specific language contained in the policies. In accord with my previous findings, however, I will prohibit inquiry into the content of the files of other insureds. Accordingly, except insofar as these interrogatories seek information contained in the files of other insureds, plaintiff's motion is <u>GRANTED</u> with respect to them.

Interrogatories No. E–5 and E–6:

These inquire as to whether the insurers have ever communicated their interpretations of the language contained in their liability policies to any other insureds, agents or brokers and, if so, the contents of those communications are requested. Defendants' objections to these interrogatories include: vague and ambiguous, irrelevant and immaterial, unrelated matters, private information, privileged, confidential information, work product, unreasonably cumulative, over-extensive, overbroad, seeking legal conclusions and improper. St. Paul contends that their policies issued to Leksi speak for themselves.

As previously stated, the insurers' interpretations of their policy language is relevant to Leksi's declaratory judgment action, however, the contents of the files of other insureds is not discoverable. Insofar as this interrogatory requests information contained in those files, it is improper. In addition, should the defendants wish to assert a privilege in connection with this question, then they must do so with particularity. I am not persuaded by defendants' contentions that this question is overbroad, over-extensive or unreasonably cumulative. The inquiry is limited to specific language contained in their liability policies. In the interest of proportionality, however, I will limit the inquiry to the period between 1966 and the present since that is the period during which the insurers did business with Leksi and its predecessors. Plaintiff's motion is GRANTED with respect to these interrogatories, as amended.

Interrogatory No. E–7:

This requests the insurers to describe how they interpret when an "occurrence" takes place under their liability policies and to provide documents which deal with their interpretations. Defendants object to this interrogatory on the basis of relevancy, privilege, work product, vagueness, confidentiality, over-extensive, undue burden, lack of designation and seeking legal conclusions.

█ This interrogatory is duplicative since it seeks information which is also

sought in Interrogatories No. E–1(d), E–2(d), E–3(d) and E–4. As such it is unduly burdensome. Therefore, plaintiff's motion with respect to this interrogatory as drafted is DENIED.

Interrogatories No. E–8 and E–9:

These inquire as to whether the insurers have always interpreted "occurrence" under their liability policies in the same manner. Defendants object to these as vague and ambiguous, irrelevant and immaterial, unrelated matters, over-extensive, not reasonably designated, seeking legal conclusions and incomprehensible.

These interrogatories are redundant and burdensome because they seek information which is also sought in Interrogatory No. E–3(d) and E–4. Plaintiff's motion with respect to these interrogatories as drafted is DENIED.

Interrogatories No. E–10, E–11 and E–12:

These interrogatories request information regarding the insurers' communications of their interpretations of the word "occurrence" under their liability policies to Leksi, other insureds, and any agents or brokers. Defendants made essentially the same objections to these questions as they did regarding interrogatories E–5 and E–6.

These interrogatories are duplicative since they seek information which is the subject of Interrogatory No. E–5(c), E–6 and E–4. Therefore, plaintiff's motion with respect to these interrogatories as drafted is DENIED.

Interrogatories No. E–13 and E–14:

These inquire as to the insurers' interpretation of liability insurance policies to exclude the costs of cleaning up landfills and natural resources involved in toxic tort/hazardous waste claims. In addition to claiming that they do not understand these questions, the defendants' objections to them include irrelevancy, immateriality, vagueness and ambiguity, unrelated matters, not reasonably designated and seeking legal conclusions.

These questions do not seek legal conclusions but rather inquire as to the defen-

dant's interpretations of their own policies and therefore seek relevant information. However, insofar as Leksi seeks information contained in the files of other insureds, such information is not discoverable. In addition, these interrogatories as drafted are vague and disproportionate. They contain no time limit and refer to all toxic tort/hazardous waste claims ever made against the insurers. Accordingly, plaintiff's motion with respect to these interrogatories is DENIED.

Interrogatories No. E–15 and E–16:

These interrogatories request information concerning the insurer's history of excluding the types of claims made by Leksi from their liability insurance policies. Defendants' objections include: legal conclusions, irrelevant and immaterial, vague and ambiguous, improper, incomprehensible and not reasonably designated.

Insofar as these interrogatories request information contained in the files of other insureds, they seek information which is not discoverable. In addition, the interrogatories as drafted are vague and disproportionate since they contain no time limitation and refer to a nonspecific array of claims. These questions place an undue burden upon the defendants. Plaintiff's motion with respect to these interrogatories is DENIED.

II. Participation in insurance organizations:

Interrogatories No. C–1 and C–2:

■■■ These require the defendants to identify and provide information concerning their directors, officers and agents, representatives and employees, who have served as members of any committee or subcommittee of specific insurance organizations as well as nonspecific organizations who may have been involved in drafting and interpreting liability policy provisions upon which the defendants base their Answers. Defendants object to these interrogatories on the basis of relevance, materiality, confidentiality, privacy, vagueness and ambiguity, oppressiveness, unreasonableness, and overbreadth. Without waiving its objections, Federal has supplied a list of organizations to which it belongs. Hartford has also named the organizations to which it belongs.

The information sought by Leksi in these questions is relevant since discovery of information pertaining to the interpretation of the policy language is relevant to the central issue of Leksi's coverage dispute. As previously discussed, if the defendants wish to assert specific privileges in connection with these interrogatories, they must do so with particularity. However, the proportionality of the requests is troublesome. I will limit Leksi's inquiry to only the insurance organizations which it specifically names. I will not require defendants to answer the portion of the interrogatories which refers to "any other insurance industry committee or group...." Plaintiff's motion with respect to these interrogatories, as amended, is GRANTED.

Interrogatory No. C–3:

■■■ This requests the defendants to identify all documents referring or relating to or evidencing any agreement, formal or informal, between the insurers and the insurance organizations named in C–1. Defendants' objections to this interrogatory are essentially identical to those they asserted in their responses to C–1, except that Federal also argues that the term "agreement" is not defined and Hartford finds the question incomprehensible.

I agree with Federal that the term "agreement" is susceptible of many meanings and, therefore, this interrogatory is vague and unreasonable as drafted. Plaintiff's motion is DENIED with respect to this interrogatory as drafted.

Interrogatory No. C–4:

■■■ This requests all documents received either directly from the insurance organizations identified in Interrogatory C–1 or from other sources that in some way deal with the liability provisions upon which the defendants base their Answers. The defendants repeated the objections which they made to the other interrogatories contained in this section. In addition, Federal claims that the information sought

is protected by the attorney-client privilege and the work product doctrine.

The information requested by Leksi in this interrogatory is relevant. However, the question is overbroad. Insofar as Leksi seeks documents received by defendants from the insurance organizations named in C-1 which relate to the drafting and interpretation of the language Leksi specifies in Interrogatory No. E-1, I will permit the question. That language is utilized throughout the insurers' Answers to support their position that they are not obligated to defend or indemnify Leksi. The insurers have put the interpretation of the language in issue. If they have followed the dictates of various insurance organizations in that regard then their communications with those organizations are relevant. If defendants wish to assert specific privileges in connection with particular documents they may do so. Plaintiff's motion with respect to this interrogatory is GRANTED.

III. Adoption of standard-form policy language promulgated by such organizations:

Interrogatories No. H-1 and H-2:

These questions inquire as to whether or not the insurers participated in any way in the formulation of the standard form CGL policy promulgated in 1966 by various insurance trade organizations (including the Insurance Rating Board (IRB) and the National Bureau of Casualty Underwriters (NCU)), and, if so, Interrogatory No. H-2 requests identification of participating employees, officers and agents, their roles and positions. In addition, Leksi seeks all documents prepared or received in connection with said formulation. The insurers' objections include immateriality and irrelevance, vagueness, overbroad, oppressive, private and confidential information and undue burden. Federal also objects on the grounds that the terms "participate", "formulating" and "1966 CGL policy" are not defined.

These interrogatories request relevant information insofar as the 1966 standard form CGL policy contains language identi-cal to that of the policies issued to Leksi by the insurers. The information is relevant since it may lead to admissible evidence regarding the insurers' intent in composing the language of Leksi's policies. I agree with defendants that these questions are vague and overbroad since they refer to the standard policy promulgated by "various insurance trade associations and organizations." If more than one "1966 standard form CGL policy" exists, then it is difficult to determine from the interrogatories as drafted exactly which ones Leksi is referring to. Therefore, to cure any ambiguity and narrow the scope, I shall limit the inquiry to the standard form CGL policy promulgated in 1966 by the two associations specifically referred to in Interrogatory H-1 (IRB and NCU). As amended, the interrogatories are neither oppressive nor unduly burdensome. As previously stated, defendants' objections that private and confidential information is requested fails to meet the standards set forth by the Rules. If the defendants claim that some or all of the documents requested are protected by a privilege of some sort they must specify the document and the privilege. Finally, although I agree with Federal that the term "1966 CGL policy" is too vague, I do not find the terms "participate" or "formulating" to be so vague as to require further definition. Plaintiff's motion with respect to these interrogatories, as amended, is GRANTED.

Interrogatories No. H-3 and H-4:

Essentially, these interrogatories request the identical information sought in No. H-1 and H-2 except these relate to the "1973 CGL policy". In addition, Leksi specifically refers to another insurance organization, the Mutual Insurance Rating Bureau. The insurers utilized the identical objections asserted to interrogatories H-1 and H-2 and Federal claimed that the term "1973 CGL policy" needs definition.

I find that the information sought by Leksi is relevant since it may lead to admissible evidence at trial. However, I agree with Federal that the term "1973 CGL policy" requires definition. In order to cure any ambiguity, I shall limit the inquiry to

the standard form CGL policy promulgated in 1973 by the organizations which Leksi specifically refers to by name. As redrafted, I find the question neither unduly burdensome nor oppressive. Again, if the defendants wish to assert objections based on confidentiality, they must do so as previously described. Plaintiff's motion with respect to these interrogatories, as amended, is GRANTED.

### Interrogatories No. H–5 and H–6:

No. H–5 inquires whether the defendants have participated in any way in the process of formulating or drafting the pollution exclusion clause—either as an endorsement to or as a provision of any liability insurance policy—and/or any subsequent revisions to the clause. H–6 requests information in connection with H–5 regarding participating employees, officers and agents, their roles and positions and any pertinent documents prepared or received by them. The defendants reiterated the objections they asserted to H–1—H–4.

The defendants' Answers include affirmative defenses in which they allege that the policies issued to Leksi exclude damage to cleanup arising out of pollution. *See* St. Paul's and Federal's Answer, Twenty–Second Affirmative Defense; Hartford's Answer, Separate Defenses paragraph 5; Atlantic's Answer, Sixteenth Separate Defense. The intent of the insurers in drafting or formulating a pollution exclusion clause is relevant to those defenses. Discovery which may lead to evidence of the insurers' intent which may be admissible at trial must be permitted. However, the scope of the interrogatories shall cease insofar as Leksi seeks information from the files of other insureds. In view of this limitation, the scope of the inquiry is not unduly burdensome. Again, should defendants wish to assert specific privileges they shall do so with particularity. Plaintiff's motion with respect to these interrogatories, as amended, is GRANTED.

### Interrogatories No. H–7 and H–8:

These request a list of factors which the insurers considered when they decided to adopt the "1966 CGL policy" and the "1973 CGL policy" and "the pollution exclusion clauses" along with pertinent documents. Defendants reiterate the same objections they asserted to H–1—H–6.

These questions do not ask for irrelevant or immaterial information. They inquire as to the decision-making process utilized by the insurers' when they determined to adopt policy language. However, they are vague, ambiguous and overbroad insofar as they do not define 1966 or 1973 CGL policy. I shall limit those definitions as I have done in No. H–1 and H–3. Also, Leksi may not discover information contained in the files of other insureds. In addition, should the defendants specifically object to the production of any document they shall do so with particularity as previously discussed. Plaintiff's motion with respect to these interrogatories, as amended, is GRANTED.

### Interrogatory No. H–9:

■ This requests that defendants identify any judicial decisions which motivated them to adopt the 1966 and 1973 CGL policies and the pollution exclusion clause. Defendants' claim that this question seeks private and confidential information. Although, I am inclined to agree, I can only speculate as to whether the defendants are asserting an attorney client privilege or any other since they have failed to make proper objections and I shall not rule on that basis. Although the defendants' reliance on case law is arguably part and parcel to their interpretation and adoption of specific policy language, I can see no reason to compel the defendants to prematurely brief the issues of the declaratory judgment action which is what I believe Leksi is seeking to do. Plaintiff's motion with respect to Interrogatory No. H–9 is DENIED.

### Interrogatory No. H–10:

This requires the defendants to identify the individuals, organizations or groups which drafted any standard form CGL policy issued by them to their insureds between January 1, 1957 and the present. Defendants object on the basis of relevance, vagueness, oppressiveness and private information.

Although I have held that Leksi may discover the extent of defendant's participation in insurance organizations as well as information concerning their adoption of standard-form policy language promulgated by such groups, this interrogatory as drafted is overbroad and unduly burdensome. The information sought is only substantially relevant insofar as it does not relate to other insureds. I will limit the inquiry to those individuals, organizations or groups which drafted the CGL policies issued to Leksi by each insurer. Plaintiff's motion with respect to this interrogatory, as amended, is GRANTED.

IV. Claims of Other Insureds and Policy Reserve Information:

Interrogatory No. D–1:

■■ This asks the defendants to describe the criteria, and produce documents which are pertinent thereto, upon which they base their decisions to defend/indemnify the insureds with respect to toxic tort/hazardous waste claims. Defendants' numerous objections are based on irrelevance, immateriality, privilege, work product, over-extensiveness, and vagueness. Federal further objects on the grounds that "criteria" is an undefined term.

I disagree with Federal and find that it is possible for the insurers' to understand that what is sought is a list of factors which the insurers utilize in their decision-making with respect to environmental claims. Such "criteria" are arguably relevant to the issue of the insurers' denial of insurance coverage to Leksi for environmental claims. However, the scope of the inquiry is so general that it is difficult to determine with certainty that which Leksi seeks is reasonably calculated to lead to admissible evidence. More importantly, this interrogatory seeks not only the criteria utilized by the insurers to deny Leksi coverage but also that which they used to determine coverage issues with respect to other insureds. Production of the requested information is grossly disproportionate to this litigation and would give rise to a circus of peripheral litigation involving a multitude of non-parties. Leksi's motion

with respect to Interrogatory No. D–1 is DENIED.

Interrogatory No. D–2:

This requests the insurers to identify and provide information relating to all companies which they have insured and whose defense costs incurred in connection with environmental claims they have paid. Defendants object to this interrogatory as seeking irrelevant, privileged information in a vague and burdensome manner.

I can find no basis upon which to compel the defendants to answer this question. Although Leksi has a right to seek to compel its insurers to defend and indemnify it pursuant to its policies, Leksi has no right to a broad general history of each insurers' contractual agreements with other insureds. This inquiry is grossly disproportionate to the trial of the insurance coverage dispute between Leksi and its insurers. It is over-extensive and unduly burdensome. Leksi's motion with reference to this interrogatory is DENIED.

Interrogatory No. D–3:

This mirrors Interrogatory No. D–2 and requests the defendants to identify and provide information pertaining to all companies they have insured whom they have agreed to indemnify in connection with an environmental claim. Defendants' objections are identical to those they asserted in their responses to D–2. For the reasons stated above in connection with Interrogatory No. D–2, Leksi's motion is also DENIED with respect to Interrogatory No. D–3.

Interrogatory No. D–4:

This requests information relating to any policy reserves which defendants may have established in connection with any potential or actual toxic tort/hazardous waste claims brought against Leksi or any other insured. Defendants argue that such information is irrelevant to the issues of the declaratory judgment action. In addition, they argue that such information constitutes privileged matter and work product. Finally, they contend the inquiry is overbroad, vague and unreasonably cumulative.

I agree with defendants that policy reserve information is basically irrelevant to the issues of the underlying action, and therefore, I do not consider their other contentions. As previously discussed, claims personnel set reserves on a basis that does not entail a thorough factual and legal analysis of a policy. The amount set as a reserve is not determinative of the insurers' interpretation of policy language. Leksi's motion with respect to Interrogatory No. D–4 is DENIED.

Interrogatory No. D–5:

■ This requests the insurers to identify and describe the duties of their officers, directors, agents, employees, servants or representatives who are responsible for determining whether to pay or defend an insured against an environmental claim for the period January 1, 1957 to the present. Defendants have objected on the grounds of relevance, vagueness, burdensomeness and privilege. Federal answered this question without waiving these objections.

Identification and description of the responsibilities of defendants' personnel and others who are responsible for determining the payment or defense of environmental claims is relevant insofar as such persons were involved in the determinations made with respect to Leksi's claims. I will restrict the scope of Leksi's inquiry accordingly. Defendants have failed to describe their privilege claims with particularity and so I cannot consider them at this juncture. A claim for documents is not included in this interrogatory. Leksi seeks only to discover the identity of individuals and an outline of their obligations. I can see no reason for the defendants' assertion that the request is burdensome other than the time frame involved. Therefore, each insurer will answer only with reference to the period during which they actually insured Leksi. Plaintiff's motion with respect to this interrogatory, as amended, is GRANTED.

Interrogatory No. D–6:

This requests the insurers to review all their files in order to determine when and in what manner they received notice of environmental claims against their insureds involving clean-up costs, how they responded to said notices, and any documents relevant to this inquiry. Defendants assert objections identical to those asserted to Interrogatory No. D–5.

The insurers treatment of claims by other insureds is not discoverable since that information is not relevant to the issues involved in this litigation. Notice received of Leksi's environmental claims is relevant, however, and will be permitted. Defendants have put the adequacy of such notice in issue in their Answers. As amended, this interrogatory is not vague or burdensome. Plaintiff's motion with respect to this interrogatory, as amended, is GRANTED.

Interrogatory No. D–7:

This expands on the previous interrogatory by requesting information concerning the notice received by defendants of environmental claims involving personal injuries and property damage. Once again, defendants assert the same objections. Insofar as this interrogatory requests information in connection with Leksi's environmental claims, it will be permitted for the reasons previously discussed. Plaintiff's motion with respect to this interrogatory, as amended, is GRANTED.

Interrogatory No. A–6:

This requests the insurers to identify all liability insurance policy forms and jackets used for other insureds who are engaged in the manufacture of products. Defendants essentially object on the basis of relevance, privilege, vagueness and burdensomeness. Since this question seeks information relative only to the files of other insureds, it will not be permitted since the relevance of the information sought is far outweighed by the disproportionateness of the request. Leksi's motion with respect to this interrogatory is DENIED.

Interrogatory No. A–8:

■ This extremely broad interrogatory requires the defendants to identify all officers and employees from January 1, 1957 through the present who are or were responsible for maintaining records of liability insurance policies. The defendants

argue that this question is irrelevant, unreasonable, vague, burdensome, overbroad and over-extensive. I am inclined to agree that it is difficult to understand, overbroad and vague. However, to the extent Leksi seeks to discover the identity of those persons who were entrusted with the maintenance and custodial care of Leksi's insurance policies, the interrogatory seeks relevant information. To that extent only, plaintiff's motion with respect to this interrogatory is GRANTED.

## V. Reinsurance

### Interrogatory No. B-9:

This interrogatory inquires as to whether or not and in what manner the insurers have reinsured or otherwise transferred the risks for liability insurance policies issued to Leksi or for a group of policies of which Leksi's was a part. Defendants claim that this information is not relevant to the issues of this litigation, and that the question as drafted is vague, ambiguous, oppressive, and seeks confidential information.

Reinsurance is a business decision and is not based on the insurers' interpretation of particular policy language. It is not information which is reasonably calculated to lead to admissible evidence. However, in an instance where an insurer is unable to locate a copy of Leski's policy, this information may be helpful in reconstructing the terms of the policy or evidencing its very existence. Except in those cases where the policy itself is unavailable but, in the past, had been the subject of a facultative reinsurance certificate, this interrogatory requests irrelevant information and Leksi's motion with respect to it is DENIED.

## VI. Coverage Decisions Regarding Leksi

### Interrogatory No. G-3:

This requests the identity of the individuals involved in the coverage decisions made by the insurers with respect to their decisions not to defend or indemnify Leksi in the actions which are the subject of Leksi's complaint. Defendants claim that this re-

quests work product and privileged information, that it is a vague and ambiguous question and it is burdensome and overbroad. Only Hartford has answered this question. This question seeks information which is relevant to the underlying issues involved in the declaratory judgment action. Defendants have failed to assert their privilege objections with the proper particularity. This interrogatory is not vague or burdensome. Plaintiff's motion with respect to this interrogatory is GRANTED.

### Interrogatory No. G-4:

This inquires into the insurers' communications with other persons regarding Leksi's notices of claims. Defendants argue that this information is irrelevant, immaterial, work product and privileged. Only Hartford answered this interrogatory. It may very well be that the information sought by Leksi is protected by a particular privilege. However, I will not speculate as to which privilege the defendants are asserting applies to which communication or document. Plaintiff's motion with respect to this interrogatory is GRANTED.

## VII. Request for Production of Documents

### Request No. 1:

This requests all documents which the insurers identified in their answers to the interrogatories directed to all defendants.

Defendants shall comply with this Request insofar as they have been ordered to answer the interrogatories in question.

### Request No. 2:

This requests all documents which the defendants have identified in their answers to the contention interrogatories. Since, at this juncture, Leksi's motion to compel has been DENIED WITHOUT PREJUDICE with respect to the contention interrogatories, Leksi's motion to compel with respect to this Request is also DENIED WITHOUT PREJUDICE.

## CONCLUSION

For the foregoing reasons plaintiff's motion to compel will be GRANTED IN PART and DENIED IN PART.

The motion is <u>GRANTED</u>, and the defendants shall furnish the more specific answers or other information required in response to Interrogatories Numbered B–4; E–1,2,3,4,5,6; C–1,2,4; H–1,2,3,4,5,6,7,8,10; D–5,6,7; A–8; G–3,4 and Document Request No. 1, each of which shall be served upon plaintiff's counsel within twenty (20) days of the date of the entry of this order.

The motion is <u>DENIED</u> with respect to Interrogatories Numbered E–7,8,9,10,11,-12,13,14,15,16; H–9; C–3; D–1,2,3,4; A–6; and B–9.

The motion is <u>DENIED WITHOUT PREJUDICE</u> with respect to the Contention Interrogatories and Document Request No. 2.[6]

No costs or fees are awarded.

---

**6.** The defendants have made informal references in their opposition papers to compel Leksi to comply with their discovery requests. It is unclear, at this juncture, whether Leksi has made further attempts to comply with the defendants' requests since the filing of defendants' opposi-

tion papers. I will not make findings in relation to the defendants' discovery requests at this time. Should the insurers feel that the court's intervention is necessary at any time, they may file the appropriate papers.