Lewis P. CABOT and Daniel
J. Quinn, Plaintiffs,

v.

The UNITED STATES, Defendant.

Nos. 92–315T and 92–457T.

United States Court of Federal Claims.

Feb. 5, 1996.*

---

\* This order originally was not issued for publication. The court received a written request from defendant that the order be published. Accordingly, this order is reissued as of March 11, 1996, and is available for publication.

Richard d'A. Belin, Boston, Massachusetts, for plaintiffs.

Karin L. Moss, with whom were Loretta C. Argrett, Assistant Attorney General, Mildred L. Seidman, Chief, and Mary M. Abate, of counsel, Washington, D.C., for defendant.

## ORDER

LYDON, Senior Judge:

This order addresses three separate motions, filed by defendant on November 6, 1995, pertaining to discovery in this tax refund case. The issue in this case is whether plaintiffs are "responsible persons" relative to the payment of FICA taxes due the Government by Rolair Systems, Inc. (Rolair), a company with which plaintiffs were associated during the tax year ending December 1984. Discovery in this case, which closed on September 15, 1995, has been fraught with problems. See Orders dated September 21, 1995, May 3, 1995, March 29, 1995, December 6, 1994 and July 6, 1994. The parties have not been able to resolve outstanding discovery matters prior to discovery cut-off, and as a result, defendant has filed the following motions: 1) "Motion for Sanctions;" 2) "Motion to Compel Production of Certain Documents Within the Control of Plaintiff Lewis Cabot;" and 3) "Motion to Compel Production of Documents Pertaining to a City Commerce Bank Loan of $235,000 on behalf of Rolair Systems, Inc., Personally Guaranteed by Plaintiff Lewis Cabot." Plaintiffs oppose all three motions. For the reasons discussed below, defendant's motions are granted.

### I

■ Before turning to plaintiffs' substantive arguments for denying defendant's motions, the court will address plaintiffs' procedural argument. Plaintiffs argue that defendant's motions are untimely because they were filed after the close of discovery. Without citing any supporting authority, plaintiffs argue that the proper time for filing such motions is "well before the close of discovery." Plaintiffs' position is meritless and disingenuous. First, RCFC 37 does not specify any period of time within which a motion for sanctions or a motion to compel must be filed. Second, in *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976), the Supreme Court made clear that determining whether actions pursuant to Rule 37 are appropriate is a matter delegated to the discretion of the trial court. Plaintiffs accuse defendant of not pursuing discovery before the cut-off date, yet the record in this case indicates that much of the delay in discovery was due to plaintiffs unwillingness to respond to defendant's requests for production in a timely manner. For example, a review of the parties' attempts at reaching a compromise on the issue of attorney's fees for costs related to the last minute postponement of plaintiff Daniel J. Quinn's (Quinn) deposition indicates that plaintiffs did not respond to defendant's proposal dated July 13, 1995, until after defendant filed its motion for sanctions. Plaintiffs can hardly claim to have made a good faith effort to resolve the parties discovery disputes before coming to the court. Finding no merit in plaintiffs' timeliness argument, the court will next address the merits of each of defendant's motions.

### A. Motion for Sanctions

■ In this motion, defendant seeks $1,524.30 as payment for attorney's fees ($1,389.30) and court reporter costs ($135) defendant incurred in connection with the properly noticed and scheduled deposition of plaintiff Quinn, which Quinn failed to attend. The parties had agreed to conduct the Quinn deposition at 10:00 a.m. on January 23, 1995, in Indianapolis, Indiana. Plaintiffs' counsel had advised defendant that he would not attend his client's deposition. As noted above, Quinn failed to appear at the agreed upon time. Later that morning, defendant's counsel called Quinn's counsel, Richard Schaul–Yoder (Yoder), who advised that Quinn had left a message that he would not be able to attend his deposition as scheduled

because he had a business meeting that morning. Yoder further explained that he had only received Quinn's message earlier that morning. Yoder also advised defendant that Quinn might be available after 2:30 p.m. that afternoon. When Quinn failed to appear by 3:00 p.m., the parties called off the deposition.

RCFC 37(d) provides that if a party fails to attend his own properly-noticed deposition, the court may on motion:

> [T]ake any action authorized under paragraphs (A), (B) and (C) of subdivision (b)(2) of this rule.[1] In lieu of any order or in addition thereto, the court *shall* require the party failing to act or the attorney advising such party or both to pay the reasonable expenses, including attorneys' fees, *caused by the failure,* unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. (emphasis added)

Defendant argues that there is neither justification for Quinn's failure to appear, nor any circumstance that would make an award of the expenses sought unjust.

Ultimately, plaintiffs do not dispute that sanctions are appropriate in this case; instead, they contend that the sanctions sought by the government are inappropriate and excessive. Plaintiffs argue that defendant's demand for reimbursement of fifteen hours of attorney's fees in connection with the postponement of the deposition is excessive because at least ten hours of this time was spent in deposition preparation, which defendant had to spend regardless of the location of the deposition. Plaintiffs have offered to pay for only five of the fifteen hours of requested attorney's fees; these five hours represent the time between the scheduled start of the deposition and the time when it was called off. It is important to note that in

an attempt to reach a reasonable compromise with plaintiffs, defendant voluntarily withdrew from its claim all travel costs, including meals and expenses, in the amount of $497.

Plaintiffs' characterization of the disputed ten hours as time spent on deposition preparation is inaccurate. Defendant states that because she had to wait until 3:00 p.m. before being notified by plaintiffs' counsel that Quinn would not appear, she had to take a later flight which delayed her return to Washington by five and one half hours. Defendant attributes the remaining four and one half hours to "duplicated preparation time." The court finds that the disputed ten hours were "caused by the failure" of Quinn to appear at his properly noticed deposition, and therefore are appropriate and reasonable. Accordingly, the court grants defendant's motion for sanctions in the amount of $1,524.30.

## B. Motion to Compel Production of Documents within the Control of Plaintiff Lewis Cabot

 Pursuant to RCFC 26 and 37, defendant seeks an order compelling the production of certain documents that are responsive to its First Request for Production of Documents. Specifically, defendant seeks production of a file regarding the March 13, 1984 Shareholder/Board of Directors' Meeting of Rolair. Defendant's counsel states that she first became aware of the requested documents during the January 31, 1995 deposition of attorney John S. Poucher (Poucher), who served as both an attorney for and officer of Rolair. These documents were delivered by Cabot or his representative to the law firm of Wyman, Bautzer, Kuchel & Silbert (Wyman, Bautzer), in connection with their representation of Cabot in a lawsuit brought against him by Joseph Babic, former president of Rolair. Wyman, Bautzer has since dissolved.

---

1. RCFC 37(b)(2) provides in part:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting such party

from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings unless the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; . . .

Plaintiffs do not dispute the relevancy of the documents in question or claim any privilege thereto, rather plaintiffs argue that the documents are not within the custody or control of Cabot. This file and other possibly relevant documents are now under the charge of a California Superior Court appointed Receiver. The Receiver has notified defendant that the requested files are in storage but are inaccessible due to lack of funds. The Order issued by the California Superior Court provides, in part:

> The Receiver shall endeavor to secure the case files of [Wyman, Bautzer] in such manner that present and former clients of [Wyman, Bautzer] shall have access thereto. He shall permit clients of [Wyman, Bautzer] to obtain their files, and shall permit turnover of said files to said clients or to such persons as they shall in writing direct.

In a previous Order, this court instructed plaintiffs that they "have a responsibility to produce or claim privilege for all documentation wherever located to avoid any inference that documentation was moved, hidden or destroyed or exists but in other hands." See Order dated May 3, 1995.

■ Although plaintiffs protest that Cabot does not have custody or control of the documents, plaintiffs neither offer support for this proposition nor address the Order issued by the California Superior Court quoted above. That Order clearly requires the Receiver to turn over the documents in question to Cabot or his designee upon his written authorization. Thus, Cabot has the legal right to the documents defendant seeks and should have produced them when first requested. If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have "control," even if the documents are actually in the possession of a non-party. "Control" comprehends not only possession but also the right, authority, or ability to obtain the documents. See 4A J. Moore, *Moore's Federal Practice* ¶ 34.17, at 34–64—34–68 (1995) (citing *Searock v. Stri-*

*pling,* 736 F.2d 650 (11th Cir.1984)). Consequently, the court finds that Cabot has "control" of the documents in question.

It appears from plaintiffs' short brief in Opposition to defendant's motion that the real deterrent to production of the documents is payment of the Receiver's costs. Plaintiffs contend that "Cabot should not be required to pay monies to the Receiver in order to satisfy requests of the government, since it is the government that wants the files and not Cabot and they are not in his custody or control." RCFC 26(b)(1)(iii) provides that the court may limit discovery if "the discovery is unduly burdensome or expensive ..." Plaintiffs have not demonstrated or even claimed that producing the documents in question would be unduly burdensome or expensive. Plaintiffs do not claim that they have even attempted to retrieve the records or reach an agreement with defendant as to paying the Receiver's costs.[2] Because Cabot has "control" of the documents in question and plaintiffs have not persuaded the court that any good reason exists for not producing these documents, defendant's motion to compel is granted.

### C. Motion to Compel Production of Documents Pertaining to a City Commerce Bank Loan of $235,000 on behalf of Rolair Systems, Inc., Personally Guaranteed by Plaintiff Lewis Cabot

■ The documents that are the subject of this motion to compel were produced at the January 31, 1995 deposition of Poucher, in Santa Barbara, California. Defendant's counsel avers that included among the corporate files of Rolair was a line of credit guaranty in the amount of $235,000 (Guaranty) from City Commerce Bank for Rolair, and other related documents dated "August or September 1983 or 1984." The line of credit was personally guaranteed by Cabot, whose signature appeared on the document. Next, defendant's counsel avers that she marked for copying and turning over the Guaranty and the documents pertaining to the $235,000

---

**2.** Defendant's counsel states that during a phone conversation with plaintiffs' counsel, Richard Schaul–Yoder, in late June 1995, she provided information about the documents at issue. Since that conversation, defendant has received no communication from plaintiffs' counsel regarding these documents.

loan to Rolair, along with other documents produced at the deposition. Defendant states that she gave all of the marked documents to Poucher, who then gave them to an assistant for copying at his office. Upon return to her office, defendant's counsel discovered that those documents pertaining to the $235,000 loan were not included among the copied documents.

Plaintiffs respond that they do not have the documents defendant seeks, because the documents in question were "lost by the government when they were in its possession ..." In support of this contention, plaintiffs rely on a March 6, 1995 letter from Poucher to defendant's counsel. This letter does not support plaintiffs' position. In this letter, Poucher states that his copies of two promissory notes were not returned to him by the IRS personnel who had copied them. The two promissory notes to which Poucher refers, however, are not the subject of the present motion. Poucher does not suggest in his letter that defendant's counsel lost the documents that are the subject of this motion, and any claim by plaintiffs to that effect is baseless. Poucher's letter provides, in part:

> 3. You requested documents pertaining to a loan totalling $235,000 from City Commerce Bank, personally guaranteed and signed by Lewis Cabot in August 1984. We made a diligent search of records and can find no such document. My secretary and I each double-checked all of the Hovair files, and I looked through some of them a third time, looking for the referenced document. No document referencing a personal guarantee by Lewis Cabot of a loan from City Commerce Bank could be found in the Hovair files. There may be one there, but we cannot find it.

Poucher does not dispute that he ever had these documents, only that he cannot now find them.[3] Defendant's counsel's averment that she reviewed and marked for copying the loan documents is essentially unchallenged by plaintiffs.

Plaintiffs also contend that the loan documents are irrelevant. The court disagrees. Discovery may be had if the material sought is "relevant to the subject matter" and if it is "not privileged." RCFC 26. "Relevant matter encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 104 (D.N.J. 1989) (citing *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). "The question of relevancy is to be more loosely construed at the discovery stage than at the trial." *Id.* (citing 8 C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure* § 2008). The loan documents defendant requests are relevant to one of the issues in this case, i.e., whether Cabot was responsible for paying FICA taxes during the years in question. Accordingly, defendant's motion to compel is granted.

## II

For the reasons discussed above, defendant's motions are **GRANTED**. Plaintiffs' are ordered to:

1. Pay forthwith to defendant $1,524.30 as sanctions for plaintiff Daniel J. Quinn's failure to appear at his properly noticed deposition.

2. Fully comply with defendant's request for production by producing forthwith the file regarding the March 13, 1984 Shareholder/Board of Directors' Meeting of Rolair Systems, Inc., and all other relevant documents maintained by the Receiver in the files of the law firm of Wyman, Bautzer, Kuchel & Silbert.

3. Fully comply with defendant's request for production by producing forthwith copies of the Continuing Guaranty on behalf of Rolair with City Commerce Bank in the amount of $235,000 signed by plaintiff Lewis Cabot and all other documents relevant thereto in their possession, custody or control.

Defendant is to advise the court when plaintiffs have complied with the court's or-

---

3. Poucher states that he and his secretary searched the Hovair files, however, the loan documents pertain to a loan to Rolair. Poucher has not indicated whether he has conducted a thorough search of the Rolair files.

der. If the documents covered by paragraphs 2 and 3 above are not produced within a reasonable period of time, defendant's counsel will be permitted to make an offer of proof at trial as to what the documents in question would establish if they were available as exhibits in this case. Hopefully, the parties will now timely comply with the existing pretrial order, issued on September 21, 1995, later amended by order dated January 22, 1996, and also reach agreement on the date and place for trial.