MONTECATINI EDISON, S. p. A., and Montecatini Societa' Generale per L'Industria Mineraria e Chimica, Plaintiffs,

v.

REXALL DRUG AND CHEMICAL COMPANY, Humble Oil & Refining Company, Enjay Chemical Company, Chevron Chemical Company and Avisun Corporation, Defendants.

Civ. A. No. 3343.

United States District Court
District of Delaware.

March 7, 1968.

Edmund D. Lyons, of Morris, James, Hitchens & Williams, Wilmington, Del., Edward S. Irons and Mary H. Sears, of Irons, Birch, Swindler & McKie, Washington, D. C., for plaintiff.

David F. Anderson, of Potter, Anderson & Corroon, Wilmington, Del., Dean Laurence and Margaret Laurence, of Laurence & Laurence, Washington, D. C., and Fred Valles, Lakewood, Ohio, of the Ohio Bar, for defendant Rexall Drug and Chemical Co.

Arthur G. Connolly, Jr., of Connolly, Bove & Lodge, Wilmington, Del., Thomas Reddy, Jr., and S. Leslie Misrock, of Pennie, Edmonds, Morton, Taylor & Adams, New York City, for defendants Humble, Enjay and Chevron.

Robert H. Richards, Jr., of Richards, Layton & Finger, Wilmington, Del., Roger V. N. Powelson and Charles E. Feeny, Philadelphia, Pa., of Sun Oil Co., for defendant Avisun.

MEMORANDUM OPINION

CALEB M. WRIGHT, Chief Judge.

On October 23, 1967 this Court ruled that the plaintiff answer defendant Rexall's Interrogatory 42 which reads as follows:

"Claim 1 of the patent in suit, 3 112 300, reads as follows:

'A high molecular weight polypropylene consisting essentially of isotactic polypropylene made up of isotactic macromolecules which are insoluble in boiling n-heptane and have substantially the type of stereoregular structure illustrated in the model of a portion of an isotactic polypropylene macromolecule, fully extended in a plane, as shown in FIGURE 2 of the accompanying drawing.'

"Claim 1 of U. S. Patent 3 112 301, issued 1963 November 26 and also assigned to plaintiff, reads as follows:

'As a new product, polypropylene consisting essentially of polypropylene which is insoluble in boiling ethyl ether, which is made up of macromolecules each of which shows the isotactic stereoregular structure, and which consists prevailingly but not essentially of isotactic macromolecules having substantially the isotactic structure and being insoluble in boiling n-heptane, the remainder of said macromolecules being soluble in boiling n-heptane.'

"(a) Precisely state where the dividing line is between the percentage of boiling n-heptane insoluble polypropylene having the isotactic structure which can be present in a polypropylene which plaintiff contends will infringe one of the above patents but not the other and identify by column and line where the basis is in each patent for the selected percentage.

"(b) What is the minimum percentage of boiling n-heptane insoluble polypropylene having the isotactic structure which plaintiff will contend must be present in a polypropylene to infringe Claim One of the patent in suit?

"(c) What is the maximum percentage of boiling n-heptane insoluble polypropylene having the isotactic structure which plaintiff will contend can be present in a polypropylene product and such product consist 'prevailingly but not essentially of isotactic' polypropylene?

"(d) What is the maximum percentage of boiling n-heptane soluble propylene which can be present in a polypropylene product which plaintiff will contend to be an infringement of said Claim One of the patent in suit?" [1]

The plaintiff has filed a motion for reargument. The local rules of this Court governing the filing of such a motion have not been complied with inasmuch as the motion was filed out of time. Both the plaintiff and defendants, however, have filed extensive briefs. Because of the apparent importance of Interrogatory 42, in the interest of justice, and in order to facilitate the progress of what appears to be an unnecessarily long and complicated patent infringement suit, I have decided to overlook the technical noncompliance with the local rules and decide the plaintiff's motion on its merits.

In support of the motion, plaintiff points to five areas in which the previous ruling was in error. The Court will consider these arguments seriatim.

1. "The construction of a claim is a question of law, not of fact, to which interrogatories are improperly directed."

1. It will be remembered that in accordance with a prior ruling of this Court, Rexall's Interrogatory 42 need only be answered with respect to the '300 patent in suit. No response need be made to requests for comparisons between the scope of the '300 and the '301 patents and for the meaning of terms as used in the '301 patent.

■ This argument ignores the subtle, though significant, distinction between interrogatories which require a construction of a claim and those which merely ask that a party state his contentions. There is nothing impermissible in asking a party to state what he presently contends in an effort to ferret out or narrow the issues. In a complex patent case this may include asking a patentee what he contends the various terms of his patent mean. Hercules Powder Co. v. Rohm & Haas Co., 3 F.R. D. 328 (D.Del.1944). As was observed in E. I. Du Pont De Nemours & Co. v. Byrnes, 1 F.R.D. 34 (S.D.N.Y.1939), a case which is analogous to the instant litigation: "The meaning of these terms will certainly be a subject of consideration and determination upon the trial and the evidence will be presented more skilfully and less wastefully and I perceive no substantial prejudice in requiring that such information be furnished in the preparation for the trial * * *." Again, the Court in Meese v. Eaton Manufacturing Co., 35 F.R.D. 162 (N. D.Ohio 1964) concluded that: "In patent cases, however, the Court can think of no one more qualified than the inventors to express opinion as to what constitutes theft of their inventiveness."

It would seem that the logic of that decision would apply, a fortiori, to a situation where, as here, the plaintiff is merely being asked to state what he presently contends certain terms of the '300 patent mean.

2. "The decision erroneously fails to recognize that patent claims are directed to a person skilled in the art, may properly use terms capable only of relative definition, and are to be finally construed only by the Court and only in light of the trial record as a whole."

■ At the risk of being labeled an egotist and with some trepidation the Court will nonetheless state that it is not quite as untutored as this objection seems to assume. The point which this objection either fails to grasp, or is reluctant to come to grips with, is that defendants, who are presumably within the category of "person(s) skilled in the art," contend that they do not understand the meaning of certain terms used in the '300 patent. Furthermore, though admittedly there may be terms that are capable of only relative definition, the terms of the '300 patent which are the subject of Rexall's Interrogatory 42 do not suggest that their meaning is being drawn from their relation to any more readily understood standard.[2] Lastly, plaintiff's answer to Rexall's Interrogatory 42 will not usurp or in any way interfere with the obligation of the Court to make a determination as to the meaning and legal effect of the term, but rather would aid the Court in making a just and proper disposition of all of the issues in the case before it.

3. "The decision erroneously is intended to foreclose and if not vacated may in fact foreclose discovery of the facts relevant to a proper infringement determination."

■ The Court "intended" to do nothing more than to properly decide the point of law which was before it. Discovery is a two-way street; while plaintiff should not be hampered in its discovery of matters relating to infringement, defendants are equally entitled to discovery relative to invalidity. The Court is unable to perceive how its decision on an interrogatory directed to the issue of invalidity can have any but the most tangential bearing upon the right to and scope of plaintiff's discovery with

---

2. Plaintiff argues that the term "consisting essentially of" has been accepted by the Patent Office as a term which evokes a definite meaning (Plaintiff's Brief, pp. 18–19). The flaw in this argument is that no where is the term, as used by the Patent Office, related to any meaningful standard. Further, the technical Patent Office meaning of the term is in no way related to the context of the specific '300 patent in suit.

respect to the issue of infringement. As will appear later, plaintiff's fears in this regard are wholly unfounded.

4. "The decision is posited on erroneous factual premises."

■ In support of this contention, plaintiff urges that there is no controversy between the parties concerning the reference of "consisting essentially of" and further that "production documents from both Humble-Enjay and Rexall make it quite clear that these parties *know full well* that they are deliberately infringing patent 3,112,300 and, therefore, that there is no legitimate question on the infringement issue." These statements, however, assume that there is no real dispute about one of the very questions which is presently before this Court for decision and to which the defendants have raised considerable objection. Plaintiff errs in assuming as true one of the very issues which the Court must decide. As was noted in the discussion of plaintiff's second objection, defendants do not agree that they understand the meaning of the phrase "consisting essentially of" as used in plaintiff's patent.

■ Plaintiff, in its brief, points out that defendants certainly do have a working knowledge of the meaning of that term because they, (at least Rexall) were able to answer interrogatories using that term and also used it in an article in a chemical trade magazine.[3] This evidence notwithstanding, the Court is concerned, and the record before it seems to amply justify such concern, that the term or terms in question have different meaning when used by the plaintiff than when they are employed by the defendants. It is this source of confusion which has permeated the entire case to date, and which the Court seeks to remedy. It seems clear that were the plaintiff to tell the defendants what it contends, the terms, as used in its patent, meant, the ultimate trial of this lawsuit would be facilitated as well

as all of the remaining pretrial procedures.

Plaintiff has several times indicated that it would be difficult to ascribe a specific numerical value to the term "consisting essentially of." This difficulty does not, however, justify a refusal to answer in toto, though the Court recognizes that the best that the plaintiff may be able to do is to answer in terms of a range of numbers or percentages. Such an answer would be wholly within the scope and the spirit of the October 23, 1967 ruling.

5. "It is not the province of the Court to repudiate the presumption that patent 3,112,300 is valid as issued (35 U.S.C. 112) and usurp the function of the Commissioner of Patents by compelling plaintiffs to rewrite claim 1 of patent 3,112,300."

■ The Court has a great deal of difficulty in trying to understand the argument made by plaintiff in support of this contention. While the Court agrees that it ought not usurp and perform the particular function of the Commissioner of Patents, it is nonetheless, not bound to accept the exercise of that function as having been proper and lawful. It appears to the Court that a central issue in this case is whether or not the Commissioner of Patents erred in issuing the '300 patent. Thus, rather than usurping the function of the Commissioner of Patents the Court is making the type of fundamental inquiry that it is legally obligated to make in all patent cases.

In view of the foregoing, this Court finds that plaintiff has failed to show good cause why reargument ought to be granted. The Court believes that an answer to Rexall's Interrogatory 42 will greatly facilitate the ultimate trial of the case by hopefully narrowing the area of controversy, or at the very least illuminate a disputed area sufficiently to enable the Court to satisfactorily determine whether the information elicited

---

3. Plaintiff's Brief, pp. 24, 25, 26.

by Interrogatory 42 has any real significance, or relevancy and is or is not of any evidentiary value in the ultimate determination of the issues of validity and/or infringement.

One colloquy between the Court and counsel for plaintiff at the October 24, 1967 hearing has disturbed the Court because it seems to have been the source of a good deal of misunderstanding on the part of plaintiff's counsel, much of which is reflected in his brief in support of his motion for reargument.

 The exchange referred to, appearing at pp. 239–241 of the transcript, had to do with the binding effect of an answer given by plaintiff to Rexall's Interrogatory 42. It will be remembered that the Court there stated that such an interrogatory would be binding in the same manner as the answer to any other interrogatory. That is, the plaintiff would answer according to what he presently understands or contends to be the facts. This would not preclude the plaintiff at some future time from changing his answer were a change in his understanding or his contentions to warrant it; if future discovery or study were to alter the plaintiff's position the Court would expect the plaintiff, in accordance with his continuing obligation to keep the answers to all interrogatories as up to date as possible, to amend his answer to Interrogatory 42.

Lastly, as indicated earlier, the plaintiff has evidenced concern that by answering Rexall's Interrogatory 42, it will somehow be foreclosed from discovering whether certain of defendants' products infringe its '300 patent.

This Court, however, sees no more reason to allow the defendant to decide which of its products infringe the claims of patent '300 by reason of any answer to be given by plaintiff to Interrogatory 42, than to allow the plaintiff to restrict the scope of discovery contrary to what this Court believes to be essential for a fair understanding of the real issues involved, because the plaintiff does not comprehend how there can be a real controversy as to validity. Plaintiff will be afforded full opportunity to inspect all of defendants' products and decide for itself those which it claims infringe the '300 patent. Ultimately, as in all other matters material to this case, it will be the Court's province to decide which of defendants' products, if any, infringe plaintiff's patent.

In light of the aforesaid, the plaintiff's motion for reargument is denied and the agreement entered into by counsel with respect to the simultaneous exchange of answers to Rexall's Interrogatory 42 on the one hand, and plaintiff's Interrogatories 231–234 on the other, is hereby reinstated and a new date for the exchange shall be set at the convenience of the parties and counsel.

Submit order in accordance herewith.