NESTLE FOODS
CORPORATION, Plaintiff,

v.

AETNA CASUALTY AND SURETY COMPANY; Insurance Company of North America; Liberty Mutual Insurance Company; and the American Insurance Company, Defendants.

Civ. A. No. 89–1701(CSF).

United States District Court,
D. New Jersey.

Nov. 13, 1990.

102

Mitchell F. Dolin, Donald Kiel, Michael Socarras, Covington & Burling, Washington, D.C., for plaintiff, Nestle Foods.

Paul R. Keopff, Richard K. Eaton, Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, for defendant, INA.

Brian R. Ade, Harwood Lloyd, Hackensack, N.J., for defendant, Aetna Cas. & Sur. Co.

John C. Sullivan, Manta & Welge, Philadelphia, Pa., for defendant, Liberty Mut.

## ORDER

CLARKSON S. FISHER, District Judge.

This matter having come before the court on appeal from the August 31, 1990 order issued by United States Magistrate Freda L. Wolfson by defendant Liberty Mutual Insurance Company; and the court having considered the oral arguments and written submissions of counsel; and for good cause shown,

IT IS on this 13th day of November, 1990,

ORDERED that the August 31, 1990 order of the magistrate be and hereby is affirmed in its entirety.

## OPINION

FREDA L. WOLFSON, United States Magistrate.

Plaintiff, Nestle Foods ·Corporation ("Nestle"), commenced this declaratory judgment action against defendants Aetna Casualty and Surety Company ("Aetna"), Insurance Company of North America ("INA"), Liberty Mutual Insurance Company ("Liberty"), and the American Insurance Company,[1] pursuant to 28 U.S.C. § 2201, seeking a determination of coverage. Defendants issued comprehensive general liability ("CGL") insurance policies to Nestle from 1959 through 1984.[2] These policies have been called into question as a result of federal and state environmental claims brought against Nestle. Defendants deny that their respective policies were intended to cover the environmental property damage caused by Nestle and have refused to indemnify Nestle for any of the costs associated with the contamination of Lone Pine.[3]

Nestle has filed extensive discovery requests which the defendants categorically oppose on grounds of relevancy, undue burden, and privilege. Plaintiff has moved to compel discovery of documents and interrogatories which fall into seven distinct areas: (1) drafting history of the policy language, (2) the handling of claims of other insureds, (3) information concerning Lone Pine, (4) evaluations of environmental risks, (5) deposition and trial transcripts of defendants' witnesses from other actions, (6) inter-insurer communications, and (7) contention interrogatories. The primary battle amongst these parties, and currently being waged by parties in environmental coverage cases across the nation, concerns the drafting history and the materials relating to other insureds.

Also before the Court is INA's cross-motion for expedited discovery on the question of the applicable choice of law. INA contends that New York law controls its policy with Nestle and that under New York law there can be no coverage for the type of damage caused by plaintiff. Thus, INA argues it would be expeditious to resolve this discovery issue now.

## NESTLE'S MOTION TO COMPEL DISCOVERY

### (1) DRAFTING HISTORY

Initially the Court must determine whether materials relating to the drafting history of the policy language in question is relevant to this action. The Federal Rules of Civil Procedure embrace a liberal policy for providing discovery. Rule 26(b)(1) contains the general provision governing the scope of discovery and provides in part, that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party ... It is not ground for objection that the information sought will be inadmissible at the trial if

1. The American Insurance Company has since settled with plaintiff and is therefore no longer a party to this action.

2. No date is provided when Liberty's coverage actually began but it is presumed to be on or about 1959 and ran until January 1, 1967. INA then provided coverage until 1974 and finally Aetna's coverage extended from 1974 through 1984.

3. In 1982, Nestle was identified by the United States Environmental Protection Agency as a potentially responsible party for alleged property damage and contamination at and around the Lone Pine landfill resulting from Nestle's shipment and disposal of coffee grounds and coffee washwater from its Freehold manufacturing facility. These coffee by-products stem from plaintiff's decaffeination process which entailed the use of solvents, trichloroethylene and, after 1972, methylene chloride. In 1983, the State of New Jersey initiated proceedings against the Lone Pine Corporation which in turn named Nestle as a third party defendant. *State of New Jersey v. Lone Pine Corporation, et al.,* No. L-956-79. In 1985, Nestle was also named as a defendant in *Lore, et al., v. Lone Pine Corporation, et al.,* No. L-03306-85, slip op. (New Jersey Sup.Ct.Law Div. November 18, 1986) which involved claims for soil and groundwater contamination brought by third parties living in the surrounding area of Lone Pine. In 1989, Nestle entered into a settlement and consent decree with the EPA and other potentially responsible parties.

the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

■ Courts have construed Rule 26(b)(1) liberally, creating a broad vista for discovery which would encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. *Tele–Radio Systems Ltd. v. DeForest Electronics, Inc.*, 92 F.R.D. 371, 375 (D.N.J.1981), citing, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978); *see also, Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947). The parties must be permitted to scrutinize all relevant evidence so that each will have a fair opportunity to present its case at trial. *Goldy v. Beal*, 91 F.R.D. 451, 454 (M.D.Pa.1981). Moreover, the question of relevancy is to be more loosely construed at the discovery stage than at the trial. Therefore, it is important to distinguish the right to obtain information by discovery from the right to use it at trial. *Leksi v. Federal Insurance Co.*, 129 F.R.D. 99, 104 (D.N.J.1989), citing, 8 Wright & Miller, *Federal Practice and Procedure*, §§ 2007, 2008.

The coverage question requires interpretation of such policy language as "pollution exclusion", "sudden occurrence", and "property damage." Plaintiff contends that material relating to the drafting history for these pertinent policy provisions is relevant to proving that the policies plainly and unambiguously provide coverage to Nestle for the Lone Pine claims.[4] Alternatively, should the policies be deemed ambiguous, plaintiff argues that the drafting history will establish through extrinsic evidence that Nestle's interpretation is correct and that *contra proferentum* applies.

Defendants dispute Nestle's relevancy claims on several grounds. First, defendants argue that plaintiff's reliance on the *contra proferentum* doctrine is misplaced since there has been no determination of ambiguity. Moreover, defendants point to Nestle's sophistication in purchasing insurance with their own in-house risk management insurance department as well as outside brokers to establish that the doctrine is inapplicable. Second, defendants Liberty and Aetna maintain that under New Jersey case law, the undisclosed intent of one party to a contract is immaterial. Defendants principally rely on the cases of *Garden State Plaza Corp. v. S.S. Kresge Co.*, 78 N.J.Super. 485, 500, 189 A.2d 448 (App. Div.), *cert. denied*, 40 N.J. 226, 191 A.2d 63 (1963) and *Kook v. American Surety Co. of New York*, 88 N.J.Super. 43, 210 A.2d 633 (App.Div.1965). INA has offered to produce its drafting history documents for the years 1966 through 1974, but to the extent that INA's offer does not satisfy plaintiff's request, INA shares the defendants' position that undisclosed intent is irrelevant. INA directs the Court to several unreported decisions. *See Asbestos Insurance Coverage Cases*, J.C.C.P. No. 1072 (Super.Ct. San Francisco Co., May 29, 1987); *Schering Corp. v. Evanston Ins. Co.*, L–97311–88 (N.J.Super.Ct., Law Div. September 6, 1989).

■ The party resisting discovery has the burden of clarifying, explaining and supporting its objections. *Tele–Radio Systems Ltd. v. De Forest Electronics*, 92 F.R.D. 371, 375 (D.N.J.1981). Defendants have met this requirement and therefore the burden remains on the discovering party to show that the information sought is relevant to the subject matter of the action. *See McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 57 (E.D.Pa.1979); *United States v. International Business Machines*

---

4. Plaintiff submitted interrogatories to each defendant asking (a) whether and why their policies used standard-form language, (b) identification of the form and non-form language portions of each policy, (c) when the form language was first and last used and in how many policies, (d) who participated in the drafting processes of the form and non-form language, (e) the details of the drafting processes and the

submission of the form language to regulatory authorities for approval, and (f) identification of any drafting history documents. Plaintiff also submitted document requests seeking all underwriting and instructional materials or manuals, as well as "how-to-sell" and promotional materials relating to the policies. (Plaintiff Brief, pp. 13–14).

*Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y.1974). Plaintiff has met this burden.

In determining the relevancy of these documents, the Court need not rule on their admissibility for purposes of trial. Defendants' position that such extrinsic evidence would be inadmissible at trial is not the standard by which relevancy for discovery purposes is measured. There has been no ruling, nor will this Court now determine, if the policies in question are ambiguous. Consequently the admissibility of extrinsic evidence, and whether *contra proferentum* will apply, remain open issues, as does the decision on the applicable choice of law. These questions are premature and remain to be decided by the trial court. Nonetheless, defendants would preclude plaintiff from exploring materials relating to these issues. But in order for plaintiff to determine whether there is a claim for ambiguity, plaintiff must be allowed to explore the creation of the language and whether the intent of the drafter(s) is inconsistent with its application. Defendants' opposition begs the relevancy question; how can plaintiff be denied documents on grounds of inadmissibility before a court has ruled on the underlying issues?

This district recently addressed these questions in the case of *Leksi, Inc. v. Federal Insurance Co.*, 129 F.R.D. 99 (D.N.J. 1989). In *Leksi*, the plaintiff, in connection with its coverage action, sought among other things, information concerning drafting history of the insurance policies, the insurer's participation in insurance organizations, and the insurer's adoption of standard form policy language promulgated by the organizations. The court declined to rule on the applicable choice of law or upon the questions of ambiguity and extrinsic evidence, leaving these decisions for the trial court. *Id.* at 103–105. The court did, however, find that under New Jersey law[5]

"extrinsic evidence might be admitted to interpret pollution exclusion clauses such

as the ones in question in this case. *See, e.g., Broadwell Realty Services Inc. v. Fidelity and Casualty Co.*, 218 N.J.Super. 516, 528 A.2d 76 (App.Div.1987). The implication, therefore, is that such extrinsic evidence is discoverable since it may lead to admissible evidence at trial."

*Leksi*, 129 F.R.D. at 103–104.

The *Leksi* court ultimately determined that drafting history is relevant to the interpretation of policy language, and indeed, this Circuit permits the meaning of a contract to be determined from the parties' intent. *See Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001 (3d Cir.1980). The court in *Leksi* further found that production would not be unmanageable or oppressive and thus, ordered the discovery to be produced. *Leksi*, 129 F.R.D. at 104.

*Leksi* was reported subsequent to the briefing and oral argument of this motion. While not citing to *Leksi*, the parties have, however, continued to direct this Court to a host of unreported decisions from various state and federal jurisdictions. The Court is not bound by these unreported decisions and furthermore finds their guidance limited by the dearth of the underlying facts in these cases and the failure of these courts to state the bases for their rulings. *See e.g., Schering Corporation v. Evanston Insurance Company*, No. L–97311–88 (N.J.Super.Ct.Law Div., August 8, 1989); *Allied–Signal, Inc. v. Abeille–Paix Reassurances*, No. MRLS–226–88 (N.J.Super. Ct., Morris Co., November 13, 1989).

However, the case of *Champion International Corporation v. Liberty Mutual Insurance Company, et al.*, 129 F.R.D. 63 (S.D.N.Y.1989) is somewhat instructive. There the court allowed plaintiff the opportunity to discover the drafting history of the provisions in question, reasoning that under New York law extrinsic evidence of intent is irrelevant only *after* a finding that

---

5. The *Leksi* court apparently looked to New Jersey law since under *Witco Corp. v. Travelers Indemnity Co.*, No. 86–2997 (JWB), slip op. at 5, 1987 WL 65060 (D.N.J. May 1, 1987), Judge Bissell held that New Jersey law applied to the

interpretation of CGL policies in a declaratory judgment action seeking coverage for claims arising out of the pollution of a New Jersey site. *Leksi*, 129 F.R.D. at 103.

the policy can be subject to only one interpretation.

█ In the case *sub judice,* the Court has not yet ruled whether the policies are subject to a plain meaning interpretation or whether the policies are ambiguous. Since both New York and New Jersey law potentially allow extrinsic evidence to be admitted in a dispute over an ambiguous contract, this Court will allow plaintiff to discover the drafting history of the policies it had with these respective defendants. *But see Olin Corp. v. Insurance Company of North America,* No. 84 Civ.1968, slip op. at 6–7 (S.D.N.Y. July 10, 1986) (where court had *already* interpreted the CGL policy language in question between Olin and INA, there was no need for defendant to provide discovery on drafting history).

The Court must next determine the scope of the drafting history to be produced. It is plaintiff's position that it should receive drafting history which predates the specific policies in question. Plaintiff reasons that the pertinent language is standardized and is the creation of the Insurance Services Office which drafts and refines policy language for the insurance industry. In support of its position, plaintiff has submitted relevant provisions of the various policies to demonstrate that the language is virtually identical. (Plaintiff's exh. 1 and 2). Defendants contend that, contrary to Nestle's assertion, their respective policies with Nestle are not the product of "standard form" policies and that each policy was individually negotiated. Therefore, any drafting history beyond that of the specific policy in question is irrelevant.

After reviewing the exhibits and arguments, the Court is convinced that the defendants did not recreate the proverbial wheel each time they entered into an insurance arrangement with an insured. While there may be subtle differences in the policies, the provisions relevant here are standardized. *See Broadwell Realty,* 218 N.J. Super. at 532, 528 A.2d 76. Accordingly, plaintiff is entitled to review the drafting history for the operative policy language, even though it may predate these respective policies.[6] Furthermore, the Court does not find defendants' burdensomeness argument persuasive.

### (2) OTHER INSUREDS

Nestle also seeks materials relating to the manner in which these defendants have handled the claims of other insureds with identical policy language. Plaintiff contends that this information is relevant to demonstrate that the defendants have acted in an inconsistent manner in resolving claims where similar policies were involved. If plaintiff is correct, such evidence could undermine defendants' position that the language in question is clear and unambiguous. Defendants, of course, oppose discovery regarding the handling of other insureds claims on the grounds that such information is irrelevant to plaintiff's claim and would place a substantial burden on defendants to review and produce hundreds of thousands of documents.

Both sides have produced an equal amount of unreported state decisions in support of their respective arguments. However, this Court finds that the information is relevant for purposes of discovery since it may show that identical language

---

**6.** On December 21, 1989, Aetna advised all counsel that they had noticed the depositions of Aetna employee, Francis Bruton and former employee, George Katz. Katz and Bruton were described by Aetna as individuals possessing knowledge of the drafting history for the 1966 comprehensive general liability policy. Plaintiff interprets Aetna's actions as conceding the relevancy of the drafting history beyond that of Nestle's policy. Defendants strenuously objected at oral argument to plaintiff's contention. Defendants represent to this Court that these court ordered *de bene esse* depositions were conducted for purposes of convenience for the

hundreds of coverage litigation cases and also to accommodate Bruton and Katz from undergoing duplicative depositions. Moreover, the defendants point out that they objected to these depositions from the outset and reserved their right to object on grounds of relevancy. This Court, in concluding that drafting history beyond that of Nestle's policy is relevant, has not relied upon these depositions. The Court will not find that depositions objected to by defendants, but ordered by another court, and taken for the convenience of counsel and for the individuals involved, operates as a concession of relevancy.

has been afforded various interpretations by the insurer. It may also tend to show that the interpretations suggested by the defendants today are not the same as those of the original drafters. But, the Court further finds that defendants do have a genuine argument for burdensomeness.

▮ The 1983 amendments to Rule 26(b) and (g) were purposely added to confront the problem of over-discovery and to allow the court to proportion discovery, even though it may be relevant. *See Fed.R. Civ.P.* 26(b) advisory committee's note; *Leksi,* 129 F.R.D. at 105; *In Re Convergent Technologies Securities Litigation,* 108 F.R.D. 328, 331 (N.D.Cal.1985). Specifically, Rule 26(b)(1)(iii) permits a court to limit discovery upon finding that "discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations of the parties' resources, and the importance of the issues at stake in the litigation." Therefore, this Court will follow those cases that have addressed the concerns of discovery and burdensomeness by limiting the number of other insureds' files to be produced. *See National Union Fire Insurance Co. of Pittsburgh, Pa. v. Stauffer Chemical Company,* 558 A.2d 1091, 1093–1096 (Del.Super.Ct.1989), and cases cited therein; *Minnesota Mining and Manufacturing Co. v. Commercial Union Insurance Co.,* No. 88–325 (MTB), slip op. (D.N.J. October 13, 1989).

Defendants shall produce their ten earliest and ten most recent underwriting files concerning environmental pollution claims, including any claims-handling manuals and guidelines connected to the files. Although INA has previously offered to produce its ten earliest and most recent claim files,[7] the remaining defendants argue that even a 10/10 production would be burdensome. While defendants will obviously incur some time and expense in gathering these documents, it is not so overwhelming as to prevent the limited discovery the Court is now ordering. Each defendant's earliest files are to be measured from the time plaintiff's coverage began with that insurer, whereas the ten most recent will be each defendant's latest files regardless of when plaintiff's coverage ended.

Defendants further object to production based upon concerns of divulging trade secrets and business practices. This fear can be alleviated by redacting confidential information, including the name of the insured, from the files. Redaction of confidential information will not deprive plaintiff of the information it requests, such as, the policy language involved, the nature of the pollution and the insurer's interpretation of the policy. Moreover, to the extent any file contains what defendants would characterize as work-product or attorney-client communications, defendants must submit a privilege log, identifying the material withheld, specifying the applicable privilege(s), identifying the author of the document, the recipient(s) of the document and the date of the documents. The question of whether any of the material is privileged is for the Court to determine after appropriate assertion of the privilege.

## (3) INFORMATION CONCERNING LONE PINE

▮ Plaintiff maintains that the defendants, by relying on the affirmative defense that the contamination at Lone Pine was not the result of an "occurrence" but rather was caused by pollution that plaintiff knew or should have known about, have placed the history, operations, and plaintiff's conduct at this landfill into question.[8] Additionally, plaintiff points to Liberty's discovery memorandum which anticipates depositions of experts to determine the history, nature, and extent of contamination at the Lone Pine Landfill.[9] Plain-

---

**7.** Plaintiff rejected INA's compromise to produce the files it was ordered to provide in the *Stauffer* and *Minnesota Mining Manufacturing* cases.

**8.** Liberty does not raise this affirmative defense since its policy with Nestle did not contain an "occurrence" clause. However, it contends that Nestle's actions are excluded from coverage.

**9.** Subsequent to oral argument, Nestle submitted a supplemental memorandum addressing the May 2, 1990 deposition of Albert J. DiDonato, a claim technical specialist for Aetna.

tiff propounded interrogatories and served requests for documents on the defendants in an effort to determine defendants' knowledge surrounding the contamination at Lone Pine.[10]

■ Aetna contends that the "occurrence" defense hinges on plaintiff's, not defendant's, knowledge of the nature of the waste and the manner in which it was disposed. Despite the general objections to relevancy, vagueness, and overbreadth, Aetna and the other defendants represent that they have provided or will provide the plaintiff with the necessary documentation responsive to interrogatories one through three. The Court, however, finds defendants' responses unacceptable.[11] If defendants are seeking to respond to an interrogatory by reference to a document then they must comply with Rule 33 of the Federal Rules of Civil Procedure. Under Rule 33(c), the responding party may answer an interrogatory by specific reference to a document where the answer may be found. However the specification must be made with sufficient detail that will allow the discovering party to locate and identify the records from which the answer may be obtained. *Fed.R.Civ.P.* 33(c); *see also Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d 32, 35 (3d Cir.1979); *Holben v. Coopervision, Inc.*, 120 F.R.D. 32, 34 (E.D.Pa.1988). In the instant case, interrogatories one through three are not irrelevant, overbroad, vague, or burdensome and should be answered by the defendants in a more detailed and complete manner.

Interrogatory number four, which seeks information concerning any inspections or visits by defendants' employees, has been answered in the negative by defendants INA and Liberty. Accordingly, no further response is warranted. However Aetna has not adequately responded to this question and shall answer by proper use of Rule 33(c) or by direct response.

All defendants have refused to respond to interrogatory number five based on relevancy, overbreadth, and burdensomeness, and more specifically, that identification of all of defendants' other insureds who transported waste to the site, is confidential in nature. The Court agrees that such a list

---

Nestle maintains that the testimony supports plaintiff's position that the defendants have treated the claims at Lone Pine *en mass.* Aetna refuted Nestle's argument by way of a letter brief. The Court, in reaching its findings of relevancy and burdensomeness regarding Lone Pine discovery information did not rely upon the DiDonato testimony.

**10.** The interrogatories and document requests concerning Lone Pine are identical for each defendant.

INTERROGATORIES
Part A: *The Lone Pine Site*
1. Describe in detail when you first became aware of the potential environmental claims arising out of the Lone Pine site, and describe in detail how you became aware of them.
2. Identify all individuals employed by you or acting on your behalf who have any knowledge of the alleged contamination or the environmental claims arising out of the Lone Pine site and describe in detail how each such individual first obtained such knowledge.
3. Of those individuals identified in your response to Interrogatory No. 2, indicate the five individuals who have the most knowledge about the Lone Pine site, and describe in detail the scope of their knowledge or familiarity.
4. Identify all individuals employed by your or acting on your behalf who have ever inspect-

ed or visited the Lone Pine site, and identify all documents that refer or relate to any such inspection or visit.
5. Identify all other parties insured by you alleged to have transported waste to the Lone Pine site. For each such insured, identify the years of coverage and identify (by number or other means of identification) the policies in question.
DOCUMENT REQUESTS
4. All documents that refer or relate to the Lone Pine site.
5. All documents that refer or relate to: (a) the USEPA's proceedings and activities concerning Lone Pine; (b) the NJDEP's lawsuit and activities concerning Lone Pine; and (c) *Lore, et al. v. Lone Pine Corp., et al.,* No. L–03306–85, (New Jersey Sup.Ct. Monmouth County, New Jersey).
6. All documents that refer or relate to environmental claims or liability insurance coverage for environmental claims arising out of or relating to the Lone Pine site.

**11.** Defendant Liberty did adequately respond to plaintiff's interrogatory number 2 by identifying the names of all individuals with relevant knowledge of Lone Pine, however, they did not respond to the follow-up question requesting identification of only those five with the most knowledge.

is not relevant and is confidential.[12] Thus, plaintiff's motion with respect to interrogatory 5 is denied.

Plaintiff's document requests 4, 5 and 6 are met by the same general objections of relevancy, privilege, confidentiality, overbreadth, and burdensomeness. The Court agrees with defendants that the requests as drafted are overbroad and plaintiff's motion with respect to requests 4 and 5 is denied; the plaintiff may redraft these requests to refine and narrow their scope. However, the Court finds that request No. 6, which seeks information concerning other environmental coverage claims at Lone Pine, is relevant, but is subject to the same concerns of confidentiality and burdensomeness discussed by this Court in connection with production of other environmental claims files. The Court, in order to meet the competing concerns, will require each defendant to produce two Lone Pine files, which may be included within the twenty files defendants are already being ordered to produce. By including at least two files from Lone Pine, plaintiff will be afforded a greater opportunity to compare these files against the remaining eighteen. In fact, defendants' 10/10 package may already include files from Lone Pine. The confidential material should be handled by the same protective measures outlined *supra.*

### (4) EVALUATION OF ENVIRONMENTAL RISKS

Plaintiff seeks documents and interrogatory responses relating to defendants' procedures and purposes in evaluating environmental risks. Plaintiff argues that these insurers prepared studies and evaluations in the course of their CGL underwriting and loss control efforts. Plaintiff attempts to show the relevancy of this discovery by theorizing that if these companies thought they were not liable for risks

to the environment, then they would not have explored these questions in deciding whether and how to draft and renew CGL policies.

The Court is unable to discern how this information is relevant to the interpretation of plaintiff's policy or to the affirmative defenses directed at plaintiff's conduct. By way of analogy, courts have refused to order discovery of an' insurer's reserve funds in policy interpretation disputes. Courts consider the use of reserve funds as a business consideration by the insurer and not a policy interpretation. *See Leksi, Inc.,* 129 F.R.D. at 106; *Stauffer Chemical Company,* 558 A.2d at 1097; *Independent Petrochemical Corp. v. Aetna Casualty and Surety Company,* Civ.Action No. 83–3347, slip. op., 1987 WL 8512 (D.D.C. March 9, 1987). Similarly, defendants' evaluations of environmental risks were conducted as part of their general liability underwriting and not in connection with their interpretation of plaintiff's liability. Defendants' evaluations of environmental risks are not reasonably calculated to lead to admissible evidence and certainly, on balance, plaintiff's need for this information would not outweigh the burden or cost to defendants in providing this discovery.

### (5) DEPOSITION AND TRIAL TRANSCRIPTS

Plaintiff also seeks the transcripts of any deposition or trial testimony given by any of defendants' employees, agents, experts or representative from *any* suit in the United States that concerns the application of insurance policies to environmental claims.[13] Plaintiff urges that these materials will alleviate discovery burdens on both plaintiff and defendants. However defendants argue, and the Court agrees, that plaintiff's broadly drafted request would unduly burden the defendants. (*See* Cavo Affid.).[14]

---

**12.** This finding of confidentiality is consistent with the Court's determination in connection with the production of other insureds' files, where the Court has directed defendants to redact the names of these other insureds from the files produced, p. 107 *supra.*

**13.** Plaintiff's first set of document requests, number 9.

**14.** Richard Cavo is an attorney who serves as Claims Counsel in the Commercial Insurance Division of the Aetna Casualty and Surety Company. He has attested that there are currently

■ However, plaintiff argues in its reply brief, that at this point it simply seeks a list identifying the officials, employees, agents, representatives or experts who have been deposed or have testified in any lawsuits pertaining to insurance coverage for environmental claims. The Court is not satisfied that the defendants have shown that the compilation of such a list would be burdensome. Therefore, defendants shall compile such a list of names in accordance with the information requested in plaintiff's interrogatories (Aetna, No. 148; INA, No. 133; Liberty No. 120). Defendants shall also indicate which cases are presently subject to a protective order. Defendants are not, however, required at this time to produce deposition or trial transcripts. If plaintiff does at some point make a discrete request for specific transcripts, the parties, and if necessary, the Court, will assess the burdensomeness of such a request in light of the scope of that request. If transcripts are produced, plaintiff shall pay the copying costs.

## (6) INTER–INSURER COMMUNICATIONS

■ Plaintiff, by way of interrogatories and document requests, seeks details regarding any inter-insurer meetings that may have dealt with coverage for environmental claims. Plaintiff has not sufficiently detailed the relevancy grounds for such information. In its moving brief, plaintiff simply states that "these materials are discoverable and should be produced here." (Plaintiff's Brief, p. 28). Following defendants' refusal to comply with these discovery requests, based on grounds of relevancy and burdensomeness, plaintiff did not elaborate on "relevancy" in its reply brief. Resultingly, the Court finds that plaintiff's requests do not establish grounds for production in the face of defendants' seemingly valid objections.

1,500 active files in the Environmental Claims Unit. The Environmental Claims Unit in the Commercial Insurance Division was established by Aetna in 1985 to handle claims involving harardous waste or environmental pollution.

## (7) COVERAGE CONTENTIONS

Plaintiff also seeks responses to interrogatories that were propounded to determine the various coverage defenses that have been asserted by the defendants in the past and will be asserted in this action. Defendants refuse to respond to these contention interrogatories until they have had an opportunity to gather and review more extensive discovery. Generally, an interrogatory may properly inquire into a party's contentions in the suit. *See Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 157 (D.Del.1977). In fact, Rule 33(b) of the Federal Rules of Civil Procedure was specifically amended "to provide that an interrogatory is not objectionable merely because it calls for an opinion or contention that relates to fact or the application of law to fact." *Fed.R.Civ.P.* 33(b) advisory committee's note. The objective is to ferret out and narrow the issues. *See Hockley v. Zent, Inc.*, 89 F.R.D. 26, 31 (M.D.Pa.1980); *Montecatini Edison, S.p.A. v. Rexall Drug and Chemical Co.*, 288 F.Supp. 486, 489 (D.Del.1968); *Fed.R.Civ.P.* 33(b) advisory committee's note.

■ The Court must determine whether these interrogatories should be answered now and if so are the questions proper. Rule 33(b) and the accompanying advisory committee notes to the 1970 amendments clearly confer the court with considerable discretion in deciding when, if ever, a party must answer contention interrogatories. *In Re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 333 (N.D.Cal. 1985). Although the Advisory Committee did not identify when, in the pretrial stage, answers to contention interrogatories should be served, the court in *Convergent Technologies Securities Litigation* inferred that the committee contemplated that the goals of Rule 33(b) would best be served by use of these interrogatories at the end of the discovery period. *In Re Convergent Technologies Securities Litigation*, 108 F.R.D. at 336.[15] This Court

As of December 31, 1987 there were 167,103 outstanding claims in the entire Commercial Insurance Division. (Cavo Affid., ¶s 4–6).

15. The court was unwilling to totally preclude use of contention interrogatories during the ear-

agrees that judicial economy as well as efficiency for the litigants dictate that contention interrogatories are more appropriate after a substantial amount of discovery has been conducted. In the instant case, although many documents have been produced, discovery is still in its infancy. This motion was brought in connection with plaintiff's first wave of discovery requests. Accordingly, defendants need not respond to plaintiff's contention interrogatories at this time. Defendants also raise objection to the propriety of the information sought. This Court, having found such questions to be premature does not reach their validity. After additional discovery has been conducted and should plaintiff renew its requests, defendants shall respond to those questions they deem appropriate and sufficiently address their objections to the substance of the interrogatories.

## INA'S CROSS–MOTION FOR EXPEDITED DISCOVERY

INA cross-moves under *Fed.R.Civ.P.* 26(c)(2) for an order granting expedited discovery as to the choice of law applicable to the insurance contract that is the subject of this action.[16] INA contends that New York law governs and that it will file a motion to that effect once discovery on the choice of law question is complete. Plaintiff strenuously opposes INA's motion for expedited discovery on the grounds that such relief is unnecessary and would needlessly disrupt discovery.

INA confidently asserts that, aside from the situs of the contamination being in New Jersey, all other factors militate in favor of the application of New York law. INA refers the court to Judge Fisher's decision in *Armotek Industries, Inc. v. Employees Insurance of Wausau*, No. 88–3110, slip. op., 1989 WL 135562 (D.N.J. November 6, 1989) for the proposition that the place of contracting governs the choice

of law, even if the site of contamination is located in New Jersey. INA concludes that since Nestle, a corporation organized under the laws of the state of New York and at all times headquartered in New York, entered into the INA insurance contract in New York, paid for the policy in New York, and received the policy in New York, New York law should apply. Furthermore, INA relying on *Powers Chemco, Inc. v. Federal Insurance Co.*, 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (1989), argues that under New York law, Nestle's actions preclude it from coverage under INA's insurance policy.

 While INA's argument is facially appealing, upon closer review of the caselaw, it is apparent that INA's assumptions are flawed. First, the November 6, 1989 *Armotek* decision cited by INA did not involve a choice of law question between the place of the contamination and the place where the policy was issued, *see Armotek*, slip op. at 6; f.n. 1; that determination had already been made in an earlier decision, *Armotek Industries, Inc. v. Employees Insurance of Wausau*, No. 88–3110, slip. op., 1989 WL 21771 (D.N.J. March 7, 1989). In the March 7 decision, the court found that the state where the pollution occurred (Connecticut) did not have a more dominant and significant relationship to the parties and the underlying issues than the place of contracting. However, this determination was reached only after a careful balancing of the factors as outlined in § 193 of *Restatement (Second) of Conflict of Laws* (1971). In contrast, the court in *Witco Corp. v. Travelers Indemnity Co.*, No. 86–2997 (JWB), slip. op., 1987 WL 65060 (D.N.J. May 1, 1987), found that even though New York may have been the *lex loci contractus*, New Jersey law should apply. In *Witco*, the court, in finding that New Jersey had a dominant and

---

ly stages of litigation, however, the court emphasized its preference for later use, and placed the burden of justification on the discovering party.

**16.** Liberty, by way of letter, requested permission to join in INA's cross-motion for expedited discovery. At oral argument, counsel for Liber-

ty conceded that its policy with the plaintiff did not contain a "pollution exclusion" clause and therefore is unaffected by the choice of law issue raised by INA. Therefore, the Court does not find it appropriate for Liberty to join in this motion.

significant relationship to the parties and underlying issues, focused on the fact that (1) New Jersey was the situs of the insured risk at issue and (2) the environmental claims asserted against the plaintiff which formed the basis of the duty to dispute arose out of New Jersey law. *See also Leksi, Inc. v. Federal Insurance Company*, 736 F.Supp. 1331 (D.N.J.1990).

This Court is not being presently asked to determine the choice of law in this case, nor does this Court have any predilections as to the applicable law. However, the issue must be given some consideration to determine whether INA has demonstrated the requisite good cause to justify the Court ordering the relief it seeks. In doing so, the Court finds that because the choice of law decision will necessitate a balancing of factors that were not present in *Armotek*, it is not a "given" that New York law will apply.

Furthermore, even if it were clear that New York law controls the claims against INA, it does not follow that Nestle is not covered by the INA policy for this environmental claim. The law in New York is not settled on the meaning of the exception from pollution exclusion clauses for "sudden and accidental" dispersals. *Compare Avondale Industries, Inc. v. The Travelers Indemnity Co.*, 887 F.2d 1200 (2d Cir.1989), *reh'g denied*, 894 F.2d 498 (2d Cir.1990) *with Powers Chemco, Inc. v. Federal Insurance Co.*, 144 A.D.2d 445, 533 N.Y.S.2d 1010 (2d Dept.1988), *aff'd*, 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (1989). But even assuming *arguendo*, that INA is correct that New York law applies and that New York law would disallow coverage for Nestle's claim, that will still not end INA's involvement in this action, since during four out of the seven years of policy coverage there was no pollution exclusion clause in the INA policy. (*See* Dolin Supplemental Declaration, ¶ 13; *see also* Plaintiff's exh. 2).

INA, as the party seeking relief under Rule 26(c), bears the burden of persuasion to show good cause for such relief. *See Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). The Court is unable to find that INA has made a showing which would justify disrupting the orderly process of ongoing discovery. The choice of law issue is not as clear as INA portrays and moreover, will not extend to all its policies. INA's motion is denied.

## ORDER

IT IS on this 31st day of August, 1990,

ORDERED that defendants shall produce documents and responses to plaintiff's interrogatories 6 through 16 concerning the drafting history of their respective policies with the plaintiff; and it is further

ORDERED that defendants each produce their 10 earliest and 10 most recent underwriting files concerning environmental pollution claims of other insureds; and it is further

ORDERED that plaintiff's document request number 6 shall be satisfied by each defendant producing at least 2 files relating to the contamination at Lone Pine, which are to be included within, and not in addition to, the twenty files being produced; and it is further

ORDERED that defendants answer interrogatories one through three concerning information at Lone Pine, and to the extent defendants seek to respond by reference to documents, such responses shall be made in compliance with the dictates of *Fed.R. Civ.P.* 33(c); and it is further

ORDERED that only Aetna respond to interrogatory number 4 since INA and Liberty have adequately responded; and it is further

ORDERED that plaintiff's motion as to interrogatory number 5 is denied; and it is further

ORDERED that defendants shall provide plaintiff with a list of names as well as indicating which cases are presently subject to a protective order in accordance with the information requested in plaintiff's interrogatory numbers: Aetna, No. 148; INA, No. 133; and Liberty, No. 120; and it is further

ORDERED that plaintiff's motion as to document requests 4 and 5 is hereby denied; and it is further

ORDERED that plaintiff's motion concerning inter-insurer communications is hereby denied; and it is further

ORDERED that plaintiff's motion as to interrogatories 36–60; 64–68; 71–76; and 99–100 concerning coverage contentions is hereby denied; and it is further

ORDERED that INA's cross-motion for expedited discovery is hereby denied; and it is further

ORDERED that all applications for fees and costs are hereby denied.