U.S.A. v. Clean Harbors                    CV-89-109-L   02/21/95

**THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


United States of America, et al.

    v.                                      #C-89-109-L

Clean Harbors, et al.

## ORDER

Currently before the court is a motion by third-party plaintiff, Clean Harbors of Natick, Inc. (Clean Harbors), to compel the third-party defendant, Chicago Insurance Company (Chicago), to respond to discovery requests.  Doc. 514.  For the reasons set forth below, the motion is granted in part and denied in part.


BACKGROUND

In March 1989 the United States brought suit under the Comprehensive Environmental Response, Compensation and Liability Act, commonly known as CERCLA (42 U.S.C. § 9607), for response costs and damages regarding the Keefe Environmental Services, Inc. site (Keefe site).  The site is located in Epping, New Hampshire.

Subsequently, the State of New Hampshire filed a companion action on March 17, 1989 seeking damages against Clean Harbors with relation to the Keefe site.

When the EPA and the State of New Hampshire brought the first-party action in this case, against Clean Harbors, the complaints specifically alleged that Clean Harbors

> is a corporation which generated materials containing hazardous substances that were transported to the Keefe Environmental Services site for storage, treatment or disposal, and/or caused to be transported or transported materials containing hazardous substances to the Keefe site for storage, treatment or disposal.

On April 14, 1989, Clean Harbors filed third-party actions against its primary and excess general liability insurers, Atlantic, Chicago Insurance Company and Commercial Union. The purpose of the third-party suit was to obtain a declaration of the rights to defense and indemnification for any settlement or judgment in the Keefe litigation. Atlantic responded on June 16, 1989 filing an answer and counterclaim alleging that Clean Harbors made material misrepresentations in procuring the policies.

Procedurally, the following has transpired. On July 11, 1989, Clean Harbors moved to dismiss Atlantic's counterclaim, alleging fraud and mistake. A ruling was never made on this motion because, pursuant to an order of this court entered on May 1, 1990, discovery in the third-party action was effectively stayed pending disposition of the first-party action. On December 2, 1992 the first-party action was dismissed pursuant to

a consent decree.

A motion for summary judgment was filed by Chicago with the principal argument being that under the terms of two of the insurance policies in question, an absolute pollution exclusion endorsement precluded indemnification. By order dated January 17, 1995, this court held that under the terms of one policy there were no material facts concerning the coverage and insurance liability and therefore summary judgment was appropriate. However, as to a second policy, there were significant issues of material fact concerning coverage and insurance liability in dispute and summary judgment with respect to this second policy was denied.

The case is currently on a track for close of discovery by March 15, 1995, a pretrial material deadline of April 1, 1995, a final pretrial scheduled for April 4, 1995, and a trial to begin on April 18, 1995.

Now for the court's consideration is a motion by the third-party plaintiff, Clean Harbors, to compel third-party defendant, Chicago, to respond to pending discovery requests. Doc. 514. In support of the motion, Clean Harbors contends that although its interrogatories and other discovery requests

> cover a number of distinct and relevant factual issues,
> Chicago Insurance objects to virtually every single
> request with repetitive, boiler-plate objections.
> Chicago Insurance's responses to Clean Harbors'

3

discovery requests are nothing more than a word processing exercise which provides little or no substantive information.


DISCUSSION

Discovery is generally governed by Fed. R. Civ. P. 26. Fed. R. Civ. P. 26(b)(1) provides, in relevant part, that

> [p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of the admissible evidence.

The United States Supreme Court has stated that "[t]he key phrase in this definition--`relevant to the subject matter involved in the pending action'--has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). The relevancy requirement during discovery is less stringent than the relevancy requirement at trial. "The parties must be permitted to scrutinize all relevant evidence so that each will have a fair opportunity to present its case at trial." Nestle Foods Corp. v. Aetna Cas. and Sur. Co., 135 F.R.D. 101, 104 (D.N.J. 1990) (citations omitted).

4

Against the aforementioned backdrop, there are also limits to discovery. Specifically, Fed. R. Civ. P. 26(b)(2)(iii) provides limitations on discovery if

> the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

I.   Responses to Interrogatories

In the case at hand, Clean Harbors contends Chicago failed to adequately provide answers to interrogatory numbers 24 and 25. Interrogatory numbers 24 and 25 asked Chicago Insurance to provide answers relating to the submission of the policies for approval by the New Hampshire and Massachusetts state regulators.[1]  Clean Harbors alleges this information is relevant

---

[1]Interrogatory numbers 24 and 25 read:
    No. 24.  Identify all persons who, from January 1, 1970 until December 31, 1982, had principal responsibility for assuring that the liability policy forms and rates Chicago used for Massachusetts and New Hampshire insureds and/or risks complied with the law and regulations of the Commonwealth of Massachusetts and the State of New Hampshire, including
        (a)  the last known address of each person and/or individual;
        (b)  the title of each person and/or individual; and
        (c)  the time period in which each person and/or individual had such responsibility.

    No. 25.  Did Chicago obtain the consent or approval of the Commonwealth of Massachusetts and/or State of New Hampshire to

because the answer to these questions may determine the extent to which portions of the policies are in violation of state law.

Chicago expresses that allowing discovery on these issues is pointless because, pursuant to Great Lakes Container Corp. v. National Union Fire Ins. Co., 727 F.2d 30 (1st Cir. 1984), an insurer's failure to follow New Hampshire's statutory requirement does not result in automatic nullification of the pollution exclusion provisions or impose automatic liability on the insurer.

Simply stated, Chicago's argument is misplaced at this juncture. Fundamentally, the motion now under consideration deals solely with parameters of discovery and does not touch or address the merits of the case or ultimate matters of law. Here, unlike in Great Lakes Container Corp., the court is merely concerned with information which will allow for the relevant and reasonable search of facts, which may aid a party in the preparation or presentation of a case.

Without commenting as to whether Clean Harbors is addressing a meritorious issue or is seeking information which will be allowed at trial, interrogatory numbers 24 and 25 are within the

---

sell each Policy to Plaintiff at the premium rates charged to Plaintiff and, if so, provide the dates of such approval and the name or names of the individual representatives of the Commonwealth of Massachusetts and/or the State of New Hampshire who approved each policy and the premium rates charged.

6

realm of permissible discovery. Succinctly, at issue in this case are the terms of various insurance policies and the nature of liability imposed by the policies. Consequential to these issues, it is reasonable to expect a party to inquire as to who had responsibility for assuring the legality of the policies as well as whether the policies were issued pursuant to the laws and regulations of a particular state. Parties must be permitted to scrutinize evidence "that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Nestle Foods Corp., 135 F.R.D. at 104 (citation omitted).

In sum, this court can logically infer that information concerning issuance of insurance policies may reasonably relate to the coverage or interpretation provided by the insurance policy. Clean Harbors has asked for information that is both, narrow in time and narrow in scope. As there is a reasonable nexus between Clean Harbors' interrogatory requests and the ultimate issue presented, Chicago is instructed to provide complete, nonevasive and pertinent answers to interrogatory numbers 24 and 25.

II. Requests for Production of Documents

Clean Harbors next contends Chicago has failed to produce

7

requested documents. Specifically, Clean Harbors maintains requests for production numbered 10, 12-32 are inadequate. Chicago generally contends that the information and documents sought by Clean Harbors are irrelevant and unlimited as to date and scope.

In reviewing requests numbered 10, 12-32, the court notes that the requests appear to inquire into drafting history, insurer communications, various manuals and memoranda, information regarding other policyholders' claims, background information, the insurer's knowledge of risk, and information concerning reinsurance and reserves. The court further notes the similarity between all these requests. Specifically, each of the requests begins with the language "All documents . . . " or "All manuals, guidances, directives, memoranda, deposition transcripts, trial transcripts, arbitration transcripts . . . ." Interestingly, the "All documents . . . " or "All manuals, guidances, directives, memoranda, deposition transcripts, trial transcripts, arbitration transcripts . . ." phraseology is neither restricted in time nor restricted in scope by subsequent terms. For example, request number 21 asks for:

> All documents showing or referring to any Chicago Insurance Company directive, guideline, practice, policy or procedure for investigating, analyzing, responding to, accepting, disclaiming, settling, reserving for, or otherwise handling claims by insureds for losses caused by bodily injury or property damage

8

arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants.

As the court has alluded to previously, there is a recognized maxim that discovery is properly limited in instances where the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2). Further, Rule 26 empowers a court to "impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes." Bridge C.A.T. Scan Assocs. v. Technicare Corp., 710 F.2d 940, 944-45 (2nd Cir. 1983). Given this maxim, it is difficult for the court to subscribe to Clean Harbors' assertion that the information requested is within the entire parameters of discoverable information.

In support of its argument concerning discoverable information, Clean Harbors suggests to the court that, even if the time necessary to conduct and acquire the requested documents were substantial, the fact that the documents are relevant to the case warrants their discovery. Clean Harbors' argument borders on the disingenuous.

Superficially, the court emphasizes that

[r]elevancy . . . does not automatically entitle a plaintiff to discovery. Besides the explicit exclusion of privileged matters from the scope of rule 26(b), "Rule 26(c) . . . confers broad powers on the courts to

9

> regulate or prevent discovery even though the materials sought are within the scope of 26(b)." Fed. R. Civ. P. 26, Notes of Advisory Committee on Rules, Subdivision (b) (1970 Amendment). See In re Recticel Foam Corp., 859 F.2d 1000 (1st Cir. 1988). In addition, in 1983, Rule 26(b)(1) was amended to expand district court judges' power to limit discovery requests. Mack v. Great Atlantic and Pacific Tea Co., 871 F.2d 179, 187 (1st Cir. 1989).

Santiago v. Fenton, 891 F.2d 373, 379 (1st Cir. 1989).

Reviewing the requests for documents, it is clearly evident that Clean Harbors does not attempt to limit its inquiry to certain time periods. Rather, Clean Harbors takes the unruly and broad approach of requesting "All documents . . . " or "All manuals, guidances, directives, memoranda, deposition transcripts, trial transcripts, arbitration transcripts . . . ." Simply reading Clean Harbors' requests, there are no indications concerning the extent to which Chicago is obligated to conduct or end its research. See Williams v. City of Dothan, No. 82-226-S (M.D.Ala., March 28, 1983). If the court allowed such broad language to guide discovery, there is little doubt that Chicago would be forced to search its archives, since business inception, in order to comply with Clean Harbors' requests.

Recognizing the potential effect of requiring Chicago to look for tens of thousands of files at a potential expense of thousands of person hours and hundreds of thousands of dollars, the court is heedful of the fact that it must apply a forceful

10

use of the reins on a restive horse and disallow such broad discovery requests.  See Scroggins v. Air Cargo, Inc., 534 F.2d 1124 (5th Cir. 1976).


CONCLUSION

In light of the aforementioned discussion, Clean Harbors' motion (Doc. 514) is granted with respect to compelling Chicago to respond to interrogatory numbers 24 and 25.  However, the motion is denied with respect to compelling Chicago to produce documents referenced in requests numbered 10, 12-32.

Mindful of the complicated nature of this case as well as the value to the court of having adequate and pertinent evidence presented at the upcoming trial, the court will, subject to one caveat, adjust the discovery deadline, pretrial material deadline and final pretrial deadline in order to afford both parties ample time in which to prepare themselves for the April 18, 1995 trial date.  The one caveat is that no further continuances will be granted in this case.  Given this offering, the following schedule is set and will be strictly adhered to:

Discovery will close on March 31, 1995;

Pretrial materials must be filed with the court on or before April 7, 1995;

A final pretrial hearing will be conducted at 9:00 a.m. on

11

April 11, 1995; and

Trial will begin on April 18, 1995.

Given the extension of time, both parties are encouraged to make efficient use of the time by propounding succinct and relevant discovery requests and responding to such requests with answers that provide substantive information and are not simply word processing exercises.

Finally, considering the degree of discovery sought by Clean Harbors and the obvious need for judicial imposition or reasonable limitations on the discovery process, the court is inclined to put counsel on notice that hence forward the court will carefully scrutinize any discovery matters which may arise in the case. Pursuant to the Civil Justice Reform Act of 1990, an Advisory Group appointed by the court recommended "increased attention on a case-specific basis to judicial limitation of discovery under Rule 26." United States District Court for the District of New Hampshire, Report of the Advisory Group Appointed under the Civil Justice Reform Act of 1990 at 80 (November 10, 1993. Since all civil cases currently pending in this district will be considered in accordance with the plan, counsel can anticipate closer scrutiny by the court over discovery matters. Counsel are encouraged and expected to exercise reasonable restraint in discovery matters and to engage in good faith

12

communications with each other to resolve discovery disputes through cooperation and agreement. Counsel also have an obligation to "tailor interrogatories to suit the particular exigencies of the litigation. They ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up." Mack, 871 F.2d at 187.

February 21, 1995

_____
Martin F. Loughlin
Senior Judge

John M. Edwards, Esq.
Stanley N. Wallerstein, Esq.
Richard J. Riley, Esq.
Vincent A. Wenners, Jr., Esq.

13